UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WILLIAM TISDALE** | **CIVIL ACTION** |
| v. | **NO: 22-237** |
| **MARQUETTE TRANSPORTATION COMPANY, LLC ET AL.** | **SECTION: T (5)** |

## FINDINGS OF FACT & CONCLUSIONS OF LAW

This seaman's suit came before the Court for trial on the limited issue of plaintiff, William Tisdale's, entitlement to certain cure benefits from his employer/defendants, Marquette Transportation Company, LLC, Marquette Transportation Company Gulf-Inland, LLC, and Marquette Transportation Company Offshore, LLC (together, "Marquette").[1] Tisdale's suit arises out of a lower back injury on March 13, 2019, that occurred as he was lifting a heavy line while performing deckhand work aboard the M/V ST. JOHN ("ST. JOHN" or the "Vessel"). At issue is whether Marquette's general maritime law cure obligation requires it to pay for a three-level lumbar spine fusion surgery that has been recommended by Tisdale's treating physician, Dr. Donald Dietze, or a one-level lumbar spine fusion surgery recommended by Marquette's retained independent medical evaluation physician, Dr. John Davis.

This case was tried to the Court without a jury during a one-day trial on February 27, 2023. After carefully considering all the evidence, and pursuant to Federal Rules of Civil Procedure Rule 52(a), the Court issues the following findings of fact and conclusions of law. To the extent that any finding of fact may be construed as a conclusion of law, the Court adopts it as

---

[1] The issue of cure was severed from Tisdale's other seaman's claims upon the motion of Tisdale (R. Doc. 51). Marquette did not object to the severance of the cure claims from the remainder of Tisdale's seaman's claims. Tisdale's residual claims are set for trial on February 26, 2024.

such. To the extent that any conclusion of law constitutes a finding of fact, the Court adopts it as such.

## FINDINGS OF FACT

1. Tisdale was originally hired by Marquette as a deckhand in 2015. He subsequently worked his way up, becoming a senior deckhand, a leadman, a relief mate, mate, uncovered steersman, and then covered steersman.

2. On March 13, 2019, Tisdale was employed by Marquette and working aboard the M/V ST. JOHN as an uncovered steersman.

3. Also on March 13, 2019, Tisdale was instructed by the captain of the M/V ST. JOHN, Captain Freddie Greenhouse, to perform certain deckhand work as the Vessel conducted barge fleeting work along the Houston Ship Channel.[2]

4. The M/V ST. JOHN was owned and operated by Marquette at all times relevant.

5. Tisdale was injured when he picked up a lock line on starboard side of a barge in the ST. JOHN's tow, the MTC-1363, and felt a pop in his lower back/hip on his right side.[3]

6. Tisdale reported the accident immediately after it occurred, and a "Personal Injury/Illness Report" was completed.[4] Tisdale received an ice pack and over-the-counter medication to help with his back pain after the accident onboard the ST. JOHN. He did not perform any work on the Vessel after the accident.[5]

---

[2] Trial Transcript, p. 50.
[3] Trial Exhibit J2; Trial Transcript, pp. 52-55.
[4] Trial Exhibit J2; Trial Transcript, pp. 52-55.
[5] Trial Transcript, pp. 57-58.

7. The next day, March 14, 2019, Tisdale disembarked the ST. JOHN and was transported to an urgent care facility in Baytown, Texas, where he received medical treatment, was diagnosed with a back strain, and was released.[6]

8. After returning home to D'Iberville, Mississippi, Tisdale consulted with a friend of his, who is a chiropractor, about his injury. Tisdale's friend recommended that he obtain an MRI of his back.[7]

9. On March 25, 2019, Tisdale underwent an MRI at Merit Health Biloxi in Biloxi, Mississippi.[8] Marquette authorized and paid for the MRI.[9]

10. Thereafter, on April 25, 2019, Tisdale began treating with Dr. Joseph Cox, an orthopedic surgeon.[10] Dr. Cox reviewed the MRI and noted the following results:

> There is significant disc degeneration at L3-4 with Modi changes. There is a circumferential disc bulge leading to moderate central stenosis with severe right and moderate left neuroforaminal narrowing. There is severe lateral recess narrowing bilaterally as well. It does not appear that there is compression of the left L3 nerve root within the foramen. At L4-5 there is a broad-based disc bulge producing moderate bilateral neuroforaminal narrowing. at [sic] L5-S1 there is a broad-based disc bulge and increased signal along the posterior annulus, possibly representing an annular tear. There is mild bilateral neuroforaminal stenosis at this level. Mild bilateral neuroforaminal narrowing at L2-3. Facet effusions bilaterally at L4-5 and L5-S1.[11]

11. Dr. Donald Dietze is a board-certified neurological surgeon. The Court accepted Dr. Dietze as a medical expert in neurosurgery at trial.[12]

---

[6] Trial Transcript, p. 58.
[7] Trial Transcript, pp. 58-59.
[8] Trial Exhibit J4.
[9] Trial Transcript, p. 59.
[10] Trial Transcript, p. 59; Trial Exhibit J4.
[11] Trial Exhibit J4 at TISDALE 001192.
[12] Trial Transcript, pp. 78-79.

12. Dr. Dietze first treated Tisdale on December 9, 2019.[13] At that appointment, Dr. Dietze interpreted Tisdale's MRI and observed advanced degenerative changes at L3-L4 in the form of space narrowing, irregularity of the end plates, facet hypertrophy in the combination resulting in moderate canal stenosis, and a left L3-L4 foraminal far lateral disk herniation at L4-L5 and L5-S1. Dr. Dietze further observed that Tisdale had a coronal angulation at L3-L4 and possibly early coronal angulation at L4-L5, as well as a bulge, or broad-based disk herniation, at L5-S1. Dr. Dietze diagnosed Tisdale with a lumbar disk herniation with radiculopathy, lumbar spondylosis and lumbar disk disorder, and other secondary scoliosis of the lumbar spine. Dr. Dietze discussed treatment options with Tisdale, including a medial branch block, a radio frequency ablation, and the possibility of an endoscopic diskectomy or minimally invasive diskectomy. Dr. Dietze further informed Tisdale that a fusion procedure at L3-L4 might be required depending on his reaction to the less invasive treatment.[14]

13. At the December 9, 2019 appointment, Dr. Dietze was confident that Tisdale's disk herniation at L3-L4 was related to his accident. Dr. Dietze, however, felt that the condition of Tisdale's L4-L5 and L5-S1 levels consisted more of an aggravation of preexisting disease.[15]

14. At trial, Dr. Dietze testified that, in his medical opinion, the aggravation of Tisdale's spine at the L5-S1 level was caused by the accident.[16]

15. Dr. Dietze continued to treat Tisdale over approximately the next one and one-half years. During that time, Dr. Dietze administered three rounds of epidural steroid injections into Tisdale's lower back. Tisdale reported pain relief following each round of injections.[17]

---

[13] Trial Transcript, p. 79; Trial Exhibit J7.
[14] Trial Transcript, pp. 81-84; Trial Exhibit J7 at TISDALE001279-82.
[15] Trial Transcript, p. 84.
[16] Trial Transcript, p. 84.
[17] Trial Transcript, pp. 89-93.

16. Dr. Dietze sent Tisdale to undergo an updated MRI on July 30, 2021, for comparison to the MRI taken in March 2019.

17. On August 26, 2021, Dr. Dietze reviewed the July 2021 MRI and determined that it showed "no progression or worsening" of Tisdale's condition. Dr. Dietze further noted that a lumbar fusion surgery at L3-L4 was indicated, but recommended postponing such a surgery as long as possible. Accordingly, Dr. Dietze recommended that Tisdale undergo a radio frequency ablation procedure.[18] At trial, Dr. Dietze testified that the procedure is designed to relieve the patient's pain but does not treat the underlying condition.[19]

18. Marquette did not approve the radio frequency ablation procedure recommended by Dr. Dietze.

19. On April 13, 2022, Dr. Dietze saw Tisdale in his office. Tisdale reported no new injuries at that time.[20]

20. On June 3, 2022, Dr. Dietze saw Tisdale again. At this office visit, Dr. Dietze recommended that he undergo a lumbar fusion procedure from the L3 to S1 levels of his lower spine.[21]

21. On August 4, 2022, Tisdale again saw Dr. Dietze in his office. During this visit, Tisdale reported that he wanted to proceed with the L3-S1 fusion procedure recommend by Dr. Dietze.[22]

22. In response to Dr. Dietze's surgical recommendation, Marquette retained Dr. Davis to perform an independent medical examination (IME) and review Tisdale's medical records. Dr. Davis's opinions were presented to the Court by deposition and by way of his IME reports and

---

[18] Trial Exhibit J7 at TISDALE001319-21.
[19] Trial Transcript, p. 139.
[20] Trial Exhibit J7 at TISDALE001328; Trial Transcript, p.140.
[21] Trial Exhibit J7 at TISDALE001332-38.
[22] Trial Exhibit J7 at TISDALE0001346.

related materials. Dr. Davis was tendered as an expert in the field of neurosurgery without objection. Court accepts Dr. Davis as an expert in the field of neurosurgery.

23. On August 10, 2022, Dr. Davis evaluated Tisdale and opined that "with a reasonable degree of medical probability…Mr. Tisdale's low back pain, to the degree that it continues to exist, is directly causally related to the March 2019 work injury."[23] Dr. Davis's recommendation was for "Mr. Tisdale to either choose to live with his ongoing residual symptoms or that he move forward with an L3-L4 minimally invasive TLIF operation to decompress the exiting L3 nerve root and the spinal canal and to stabilize this extremely degenerative motion segment."[24] Dr. Davis further opined that there is "no indication for including either the L4-L5 or the L5-S1 motion segments in this construct" because Tisdale had "modest age-appropriate degenerative changes at both L4-L5 and L5-S1, but there is not so much as a hint of any nerve root compression at either of those levels nor is there any evidence of instability when comparing flexion and extension images."[25]

24. On October 11, 2022, Dr. Dietze formally requested authorization to proceed with the three-level fusion procedure.[26]

25. On November 3, 2022, Dr. Dietze ordered an updated MRI of Tisdale's lumbar spine.[27] The MRI was performed on November 21, 2022. Upon Dr. Dietze's review of the imaging at Tisdale's next appointment, on December 22, 2022, he determined that the MRI revealed "A NEW PARACENTRAL DISC HERNIATION WITH RIGHT L5 & S1 NERVE ROOT COMPRESSION."[28] Dr. Dietze noted that Tisdale complained of new right foot weakness, consistent with the new disc herniation. Dr. Dietze also opined that "this new L5-S1 disc

---

[23] Trial Exhibit J15 at TISDALE002533.
[24] Trial Exhibit J15 at TISDALE002533.
[25] Trial Exhibit J15 at TISDALE002534-35.
[26] Trial Exhibit J7 at TISDALE001353.
[27] Trial Exhibit J7 at TISDALE001361.
[28] Trial Exhibit J7 at TISDALE001364-3.

herniation is simply failure of the injured disc superimposed onto a degenerative disc, and supports my diagnosis of symptomatic progressive L5-S1 degenerative changes."[29]

26. Dr. Davis also reviewed the November 21, 2022 MRI imaging and reported that the new disc protrusion at L5-S1 "is a new finding and was not present on the MRI scan of July 30, 2019."[30] Dr. Davis further reported that his prior opinion and recommendation, for an L3-L4 minimally invasive TLIF operation with decompression and posterior instrumentation, remained unchanged. Dr. Davis opined that the new L5-S1 herniation was "in no way related to the patient's work injury."[31]

27. Based on Dr. Davis's opinions and surgical recommendations, which directly conflict with the opinions and surgical recommendations of Dr. Dietze, Marquette denied Tisdale's cure request for authorization to undergo the three-level fusion procedure recommended by Dr. Dietze.

## **CONCLUSIONS OF LAW**

1. The Court has jurisdiction over this admiralty and maritime case pursuant to 28 U.S.C. § 1333 and Federal Rule of Civil Procedure 9(h). The General Maritime Law of the United States, therefore, is the substantive law applicable to this dispute. Venue is proper in this Eastern District of Louisiana. Jurisdiction and venue are not contested by the parties.

2. On March 13, 2019, at the time of his accident, Tisdale was a seaman employed by Marquette and working aboard the M/V ST. JOHN in furtherance of its mission. Thus, Tisdale is entitled to received maintenance and cure benefits from Marquette.

---

[29] Trial Exhibit J7 at TISDALE001364-3.
[30] Trial Exhibit J16 at TISDALE002535-36.
[31] Trial Exhibit J16 at TISDALE002536.

3. Maintenance and cure are obligations imposed on a vessel owner to provide for a seaman who becomes ill or injured during his service to the ship.[32]

4. The vessel owner's maintenance and cure obligations are based on an employment relationship with the seaman, and the seaman need not prove employer negligence to be entitled to receive maintenance and cure.[33]

5. The duty to furnish cure encompasses the obligation to pay for medical expenses and to ensure proper treatment and care during the seaman's recovery.[34]

6. A seaman is free to seek treatment from any physician that he chooses. A vessel owner, however, is not required to pay for medical treatment that is unnecessary or unreasonably expensive.[35]

7. A shipowner has no obligation to provide cure payments for palliative treatments that only relieve pain and do not treat the underlying injury to improve the injured seaman's condition.[36]

8. Moreover, shipowners are entitled to investigate the propriety of a seaman's cure claim before making any payments to the seaman.[37]

---

[32] *McBride v. Estis Well Serv., LLC*, 853 F.3d 777, 783 (5th Cir. 2017); *Boudreaux v. United States*, 280 F.3d 461, 468 (5th Cir. 2002); *Vaughan v. Atkinson*, 369 U.S. 527, 531 (1962); *Aguilar v. Standard Oil Co. of New Jersey*, 318 U.S. 724, 730 (1943).
[33] *Aguilar,* 318 U.S. at 730; *Oswalt v. Williamson Towing Co.*, 488 F.2d 51 (5th Cir. 1974); *Meche v. Doucet*, 777 F.3d 237, 244 (5th Cir. 2015).
[34] *Boudreaux*, 280 F.3d at 468; *Vella v. Ford Motor Co.*, 421 U.S. 1 (1975).
[35] *See Martin v. L & M Botruc Rental, LLC*, 2019 WL 112482, at *8 (E.D. La. Jan. 3, 2019). In its post-trial briefing, Marquette argues that Tisdale is a recipient of Mississippi Medicaid and, as such, its cure obligation is relieved because Tisdale could obtain free medical care from a provider who accepts Mississippi Medicaid instead of Dr. Dietze. The Court finds this argument to be without merit because it would undermine Tisdale's right to choose his own treating physician.
[36] *See Farrell v. U.S.*, 336 U.S. 511 (1949); *Stewart v. Waterman S.S. Corp.*, 288 F.Supp. 629 (E.D. La. July 31, 1968).
[37] *See Boudreaux v. Transocean Deepwater, Inc.,* 721 F.3d 723, 728 (5th Cir. 2013) (citing *Morales v. Garijak, Inc.,* 829 F.2d 1355, 1358 (5th Cir. 1987), *abrogated on other grounds by Guevara v. Maritime Overseas Corp.,* 59 F.3d 1496 (5th Cir. 1995)) (holding that "an employer is entitled to investigate a claim for maintenance and cure before tendering any payments to the seaman…").

9. Conflicting diagnoses and prognoses of a seaman's condition from multiple physicians create a question of fact to be determined by the trier of fact as to a seaman's entitlement to cure benefits.[38]

10. When cure is due to a seaman and the shipowner unreasonably rejects the claim after investigation, the employer is liable for cure payments in addition to compensatory damages.[39]

11. Where the vessel owner has been unreasonable in refusing to pay and has also been "callous and recalcitrant, arbitrary and capricious, or willful, callous, and persistent," then it may also be liable for punitive damages and attorney's fees.[40]

12. Here, Tisdale claims entitlement to the radio frequency ablation procedure and three-level fusion surgery recommended by Dr. Dietze. Tisdale further seeks recovery of punitive damages for Marquette's wrongful denial of these cure claims.

13. The Court finds that the radio frequency ablation procedure is a palliative treatment that will not serve to improve Tisdale's back injury. Accordingly, the procedure falls beyond the scope of Marquette's cure obligation. Marquette did not, therefore, improperly deny Tisdale's request for payment of the radio frequency ablation procedure.

14. The Court finds Dr. Davis to be more credible than Dr. Dietze. The Court agrees with Dr. Davis's opinion that the three-level fusion surgery recommended by Dr. Dietze is not related to the accident at issue. The Court, therefore, concludes that the L3-L4 minimally invasive TLIF operation with decompression and posterior instrumentation recommended by Dr. Davis is substantiated by the facts presented and falls within Marquette's cure obligation to Tisdale.

---

[38] *Snyder v. L & M Botruc Rental, LLC*, 924 F. Supp. 2d 728, 734 (E.D. La. Feb. 15, 2013) (citing *Tullos v. Resource Drilling, Inc.,* 750 F.2d 380, 388 (5th Cir. 1985)).
[39] *Morales v. Garijak, Inc.,* 829 F.2d 1355, 1358 (5th Cir. 1987).
[40] *Id.*; *see also Atlantic Sounding Co. v.* Townsend, 557 U.S. 404, 422-24 (2009); *Alliance Marine Services, LP v. Youman*, 2018 WL 6523134, at *8 (E.D. La. Dec. 12, 2018) ("The key to recovering punitive damages and attorney's fees associated with a willful failure to pay maintenance and cure is that the plaintiff must prove that the employer acted arbitrarily, wantonly, or outrageously; some element of bad faith on the employer's part must be established.").

Conversely, the Court finds Dr. Dietze's opinion and recommendation for a three-level fusion surgery to be less credible than that of Dr. Davis. As such, Marquette's cure obligation does not encompass the three-level fusion surgery recommended by Dietze.

15. The Court further finds that Tisdale's claim for punitive damages is without merit. Marquette denied Tisdale's request for the radio frequency ablation procedure on the basis that it was purely palliative, rather than curative. Dr. Dietze agreed that the procedure was not curative treatment and would not improve Tisdale's underlying spine injury. Punitive damages for Marquette's denial of this cure demand are therefore inappropriate because Marquette was under no obligation to pay for this palliative procedure.

16. Similarly, the Court finds that Tisdale is not entitled to punitive damages for Marquette's refusal to pay for the three-level fusion surgery recommended by Dr. Dietze. Once Tisdale elected to undergo this procedure, Marquette had a right to investigate the propriety of his cure demand. After a reasonable investigation, Marquette denied the cure request based on the medical evidence and expert medical opinion of Dr. Davis. Marquette's refusal to pay for this cure demand cannot be said to have been arbitrary and capricious or callous and recalcitrant. Accordingly, Tisdale is not entitled to punitive damages.

## CONCLUSION

Based on the foregoing findings of fact and conclusions of law, this Court finds that Marquette's cure obligation encompasses the surgical recommendations made by Dr. Davis. The Court further finds that Tisdale is not entitled to recover punitive damages based on Marquette's refusal to pay for the radio frequency ablation procedure or the three-level fusion surgery recommended by Dr. Dietze.

New Orleans, Louisiana this 11th day of July 2023.

GREG GERARD GUIDRY
UNITED STATES DISTRICT JUDGE