## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **WILLIAM TISDALE** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. 22-237** |
| | * | |
| **MARQUETTE TRANSPORTATION CO.** | * | **JUDGE GUIDRY** |
| **OFFSHORE, LLC, ET AL.** | * | |
| | * | **MAGISTRATE JUDGE NORTH** |

**********************************************

## MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO FILE
## FIRST AMENDED COMPLAINT FOR DAMAGES

**MAY IT PLEASE THE COURT:**

### I.  THE BACKGROUND TO THIS MOTION

William Tisdale ("Plaintiff"), pursuant to Fed. R. Civ. P. 15(a)(2) and 16(b), respectfully moves this Honorable Court for an Order granting him leave to file his Amended Complaint for Damages into the record of the above-captioned matter.  Counsel for Marquette Transportation Company Gulf Inland, LLC ("Marquette") was personally contacted and objects to the granting of this motion. Undersigned counsel suggests that this motion is entirely reasonable and should be granted.

Upon  a fresh review of witness testimony and documents produced by Marquette, it was realized that filing an amended complaint to clearly set forth the chronological facts of the case was necessary.  Hence, this motion.

As the Court can see from a reading of the proposed amended complaint, the factual chronology presented is fully supported by documents (produced by Marquette) and by witness testimony in depositions or the recent bench trial of the cure issue.  There is only one accurate set

of facts which has not changed and thus far has not been presented to the Court in a cogent chronological order.  Of course, the original complaint preceded any discovery.  For example, when it was filed it was not known where each barge was located in M/V ST. JOHN's barge flotilla, or when on March 13, 2019 each barge was dripped off.[1]

Testimony by Mr. Tisdale establishes that he was in the vessel wheelhouse when the first three barges were dropped off and the dangerous conditions  leading directly to his injury were created by his fellow crew members.  Together, the documents and the testimony, if not  wholly refuting Marquette's version of the facts, at the very least create genuine issues of material fact which only a jury trial can resolve.[2]    Plaintiff suggests that it is vital to have this information before the Court (in a pleading), not only because it shows the existence of genuine issues of material fact impacting the issues of Jones Act negligence and seaworthiness,[3] but also because what is set forth in the proposed pleading narrows and clarifies the trial issues based on the actual facts.

The original, first Scheduling Order[4] was entered on April 28, 2022  and provided that amendments to pleadings, third-party actions, cross-claims, and counterclaims shall be filed no later than Friday, May 27, 2022.[5]  This amendment date is typically provided to permit the filing of third-

---

[1]Two documents produced by Marquette (Bates Nos. 000005 and 000006), both from the vessel's daily log, establish these matters.

[2]On August 2, 2023, Marquette filed a motion for summary judgment.  See Rec. Doc. 131.

[3]Undersigned counsel has been advised that Marquette plans the imminent filing of a Rule 56 motion for summary judgment.

[4]See Rec. Doc. 20.

[5]Id. at p. 2.

party complaints and cross-claims because discovery of the facts typically does not occur until after the amendment deadline. This original amendment deadline was several months *before* Marquette produced any documents or answers to interrogatories,[6] and was also months *before* any depositions were taken.[7] Until such discovery occurred, many of the actual facts were not yet known and therefore could not be featured in a supplemental complaint. Another example is Marquette's expert report which Mr. Tisdale received on December 9, 2022. In it, the issue of the alignment of the barges was raised for the first time and described contrary to information in Marquette's own vessel logbook. The need to address this error then came to light.

Similarly, facts established by testimony at the February 27, 2023 cure trial, and forming parts of the Court's findings of fact and conclusions of law similarly could not be featured in an amended complaint until the Court issued its findings on July 11, 2023.

On October 31, 2022, while the injured Plaintiff was still in need of surgery, original plaintiff's counsel filed a motion to sever the cure issue for a separate bench trial.[8] The two opposing maritime experts were not deposed, and the original February 27, 2023 jury trial date was instead used for the bench trial of the cure issue.

---

[6]Marquette responded to Plaintiff's first production request and first interrogatories on August 5, 2022.

[7]The first depositions (Jarvis Driver and Jody Williams) were taken on August 23, 2022. Six doctors' depositions were taken between September 27, 2022 and February 16, 2023, but these related primarily to Plaintiff's cure claim and its trial. Four other depositions were taken between October 25, 2022 and December 6, 2022 (Capt. Greenhouse, Plaintiff, Gregory Casanave, then Marquette's Rule 30(b)(6)).

[8]See Rec. Doc. 51.

On June 28, 2023, the Court promulgated a new, second Scheduling Order[9] and on July 11, 2023 it issued its Findings of Fact, Conclusions of Law, and Final Judgment in the bench trial of the Plaintiff's cure claim for neck surgery.[10]   This new Scheduling Order re-opened discovery through December 18, 2023, established new expert report exchange dates of November 2, 2023 and December 1, 2023 respectively, set a pre-trial conference on January 31, 2024, and set a jury trial date on February 26, 2024.

The proposed amended complaint does not advance new or novel theories of recovery.  This is self-evident from its content.  Rather, it presents a concise, understandable chronology of when critical actions occurred and gives a coherent explanation how and why their occurrence caused the March 13, 2019 accident and gave rise to Plaintiff's Jones Act and General Maritime Law claims.

## II.  ARGUMENT

### A.  The legal standard for amendment.

In *Truxillo*,[11] Magistrate Judge Currault recently addressed the standard for permitting amendment after the original deadline had passed:

" .... when leave is sought *after* the scheduling order deadline for amendments has expired, the analysis is governed by Rule 16.[12]  This second motion was filed after

---

[9]See Rec. Doc. 121.

[10]See Rec. Docs. 129 and 130.

[11]*Truxillo v. National Maintenance and Repair of Louisiana, Inc.,* No. 22-4300 at pp. 4-5 (E.D. La., June 30, 2023).

[12]See *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA,* 315 F.3d 533, 535-36 (5th Cir. 2003) (holding that Federal Rule of Civil Procedure 16(b) governs the amendment of pleadings after a scheduling order deadline has expired and only upon a showing of good cause and with the judge's consent will the more liberal standard of Rule 15(a) apply to the court's decision to grant or deny leave).

the amendment deadline, and thus, Plaintiff must satisfy the "good cause" requirement of Rule 16 before addressing the proposed amendment under Rule 15.[13] Under Rule 16(b), a scheduling order "may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b). This generally requires the movant to "show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension."[14]   The four factors relevant to determining the existence of good cause in the context of post-deadline amendment are: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice."[15] When a proposed amendment involves new recovery theories or imposes additional discovery requirements, courts will deny the request for leave to amend based on undue prejudice.[16]

Once Rule 16 is satisfied, the Court must then address the request under Rule 15(a)(2).  Rule 15 requires the court to "freely give leave [to amend] when justice so

---

[13]See *id.* at 535-36.

[14]*Filgueira v. U.S. Bank Nat. Ass'n*, 734 F.3d 420, 422 (5th Cir. 2013).

[15]*Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003) (quoting *S & W Enters., LLC,* 315 F.3d at 536).

[16]*Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 427 (5th Cir. 2004) (affirming denial of leave to amend where amendment would fundamentally alter the nature of the case); *see also Little v. Liquid Air Corp.*, 952 F.2d 841, 846 (5th Cir.1992) (affirming order denying leave to amend where the amended complaint would have "established an entirely new factual basis for the plaintiffs' claims" and thus "radically altered the nature of trial on the merits"), *reinstated in relevant part* by 37 F.3d 1069, 1073 & n.8 (5th Cir. 1994) (en banc); *Morongo Band of Mission Indians. v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) ("The new claims set forth in the amended complaint would have greatly altered the nature of the litigation and would have required defendants to have undertaken, at a late hour, an  entirely new course of defense.").

requires"[17] and "possess a 'substantial reason' to deny a request."[18] The five relevant considerations are: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by previous amendments, (4) undue prejudice to the opposing party, and (5) futility of the amendment.[19]

Once the requirements of Rule 16(b) are met, Rule 15(a)(2) grants the Court leave to amend "when justice so requires" and, in fact, the burden is on the party *opposing* the amendment to demonstrate why the amendment should not be permitted.[20]  It is an abuse of discretion for the trial court to deny leave without any justifying reasons.[21]

In *Foman,* the Supreme Court listed the following reasons to justify a denial of a request for an amendment: (1) undue delay; (2) bad faith or dilatory motive on the part of the movant; (3)

---

[17]Fed. R. Civ. P. 15(a)(2). Denial of leave to amend is reviewed for abuse of discretion. *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1174 (5th Cir. 2006). The term "discretion" in this context "may  be misleading, because [Rule] 15(a) evinces a bias in favor of granting leave to amend." *Mayeaux*., 376 F.3d at 425 (quoting *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872 (5th Cir. 2000)). A "district court properly exercises its discretion under Rule 15(a)(2) when it denies leave to amend for a substantial reason, such as undue delay, repeated failures to cure deficiencies, undue prejudice, or futility." *United States ex rel. Spicer v. Westbrook*, 751 F.3d 354, 367 (5th Cir. 2014).

[18]*Smith v. EMC Corp*., 393 F.3d 590, 595 (5th Cir. 2004) (citation omitted); *Mayeaux*, 376 F.3d at 425 (footnote omitted) (citing *Martin's Herend Imps., Inc. v. Diamond & Gem Trading U.S. of Am. Co.*, 195 F.3d 765, 770 (5th Cir. 1999); *Stripling*, 234 F.3d at 872).

[19]*Smith*, 393 F.3d at 595 (citing *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962))).

[20]See, *e.g.*, *Foman v. Davis* 371 U.S. 178, 182 (1962); and *C.F. v. Capistrano Unified School District,* 653 F.3d 975, 985 (9th Cir. 2011).

[21]*Foman,*371 U.S. at 182.

repeated failure to cure deficiencies by amendments previously allowed; (4) undue prejudice to the opposing party; and (5) futility.[22]

Indeed, some courts have held that where a complaint's deficiency *could be cured by amendment,* the leave to amend must be given.[23]    While courts have found prejudice when a proposed amendment comes *late in the proceeding* and would impose significant costs and inconvenience to the opposing party,[24] delay alone is not sufficient reason to deny leave to amend.[25]

### B.  Rule 16(b) argument.

### 1.    First factor (failure to timely move for leave to amend).

With respect to the first Rule 16(b) factor, the facts needed to underpin the facts to be set forth in the proposed supplemental complaint did not begin to come into Mr. Tisdale's possession until at least August 5, 2002 (i.e., answers to interrogatories and responses to production requests). Depositions of fact witnesses did not begin until August 23, 2022 and ended on December 15, 2022, four days before the Court's order severing the cure claim for trial and directing that a new scheduling conference be held on the remaining claims (i.e., the Jones Act  and other General

---

[22]*Smith v. EMC Corp*., 393 F.3d 590, 595 (5th Cir. 2004); *Rosenzweig v. Azurix Corp*., 332 F.3d 854, 864 (5th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

[23]See, *e.g.*, *Pinson v. 45 Development, LLC,* 758 F.3d 948, 951 (8th Cir. 2014*).

[24]See, *e.g.*,  *American Intern. Refinery, Inc.* 676 F.3d 455, 467 (5th Cir. 2012).

[25]See, *e.g.*, *Sonoma County Ass'n. of Retired Employees v. Sonom County* 708 F.3d 1109, 1118 (9th Cir. 2013).

Maritime Law claims).[26]  The scheduling conference occurred on May 28, 2023 and  the present Scheduling Order was issued on July 3, 2023.[27]

Given that the entire focus of the litigation shifted to the cure claim from October 31, 2022 until the Court's trial findings were announced on July 11, 2023,[28] and that some of those findings now form part of the proposed amended complaint,  Mr. Tisdale has not failed to timely move for leave to amend.  A nine month hiatus from the negligence and seaworthiness issues necessarily resulted from the cure issue severance, trial preparation, and awaiting the Court's ruling.

2.      **Second factor (the importance of the amendment).**

With respect to the second Rule 16(b) factor, it is critical to understand that without the proposed amendment it will be chronologically unclear (at best) how and when things happened, and how those events gave rise to Mr. Tisdale's claims and damages.  Amendment based on the facts learned after the original amendment deadline will make clear exactly how Marquette's actions were negligent and why the vessel was unseaworthy.  This is not a new claim, it is simply a request to frame the existing claims within the ambit of what is now known about how and why Mr. Tisdale was injured.

3.      **Third factor (potential prejudice).**

With respect to the third Rule 16(b) factor, Marquette has already deposed Mr. Tisdale and cross-examined him at the cure bench trial on February 27, 2023.  The facts surrounding the injury are consistent, as obtained from Mr. Tisdale, Marquette employees, and  Marquette's own

---

[26]See Rec. Doc. 82.

[27]See Rec. Docs. 120 and 121.

[28]See Rec. Docs. 129 and 130.

documents.  Marquette will suffer no prejudice because the facts set forth in the proposed amended complaint are known or should be known to Marquette.  Similarly, the legal claims arising from these facts are already well-known to Marquette.

It benefits the Court, the jury, and Marquette to receive a detailed and accurate chronology of the events preceding Tisdale's injury as supported by numerous exhibits obtained in discovery or adduced by testimony at depositions and the cure bench trial.  The jury, especially, is entitled to understand how things happened, and in what order, before it can make reasoned decisions on liability and damages.

"By contrast, no unfair prejudice exists simply because a party has to defend against new or better pleaded claims."[29] *Popp Telecom v. American Sharecom, Inc.,* 210 F.3d 928, 943 (8th Cir. 2000).  "The inclusion of a claim based on facts already known or available to both sides does not prejudice the non-moving party."[30]  This is precisely the case here.  The proposed supplemental complaint simply re-states claims already known by both sides.[31]

---

[29]*Popp Telecom v. American Sharecom, Inc.,* 210 F.3d 928, 943 (8th Cir. 2000).

[30]*Busam Motor Sales v. Ford Motor Co.,*203 F.2d 469, 472 (6th Cir. 1953).

[31]The primary allegations in the proposed supplemental complaint were pleaded generally in the original complaint. For example ¶ VII alleged:

> Plaintiff was working in a narrow passageway on the side of the barge, MTC 1363. The lock line was coiled and hanging at shoulder height, from the cover top barge. It weighed over 100 pounds, we estimate. It was raining and the line was saturated. When Plaintiff lifted and carried the lock line, he felt a pop in his low back and his back gave out. He immediately felt excruciating pain in my low back.

> 1.   Plaintiff initiated a claim for injuries under the Jones Act, Unseaworthiness, Maintenance and Cure, and under General Maritime Law on or about March 13, 2019, against any and all named Defendants

4.    **Fourth factor (the availability of a continuance to cure any prejudice caused by amendment).**

With respect to the fourth Rule 16(b) factor, clearly no continuance is needed.  Most fact depositions have already been taken, trial is still seven months away, Marquette's expert reports (if any new or revised ones are needed) are due in four months on December 1, 2022, and discovery is open until December 18, 2023.  During remaining discovery, it is expected that only a few depositions will be taken (*e.g.*, the maritime experts and perhaps a few more fact witnesses).

## C.  Rule 15(a)(2) argument.

1.    **The first factor (undue delay).**

The first Rule 15(a)(2) necessary factor, *undue* delay (as opposed to mere delay[32]), has not occurred.   As noted above regarding the Rule 16(b) factors, facts established by depositions were not available until months had passed after the amendment deadline.  Indeed, the Court's findings of fact and conclusions of law for the 2023 cure trial were unavailable until the Court issued its opinion on July 11, 2023.

Another factor was the severance of the cure claim.  On October 31, 2022, while the injured Plaintiff was still in need of surgery, original plaintiff's counsel filed a motion to sever the cure issue

---

herein, and requested approval of medical treatment.

2.    Plaintiff initiated a claim for injuries under the Jones Act, Unseaworthiness, Maintenance and Cure, and under General Maritime Law on or about March 13, 2019, against any and all named Defendants herein, and requested approval of medical treatment.

[32]See, *e.g.*, *Sonoma County Ass'n. of Retired Employees v. Sonom County* 708 F.3d 1109, 1118 (9th Cir. 2013).

for a separate bench trial.[33]   The original February 27, 2023 jury trial date was instead used for the bench trial of the cure issue.   Less than one month after the results of the bench trial were released, Mr. Tisdale has sought leave to amend.

**2.      The second factor (bad faith or dilatory motive).**

The second Rule 15(a)(2) factor is whether Mr. Tisdale's request for leave to amend is grounded in bad faith or any dilatory motive.  There is absolutely no evidence of this.  He only seeks amendment to chronologically conform the pleadings to evidence he has discovered.  This will explain how and why he was injured and illuminate Marquette's negligence.

Mr. Tisdale does not seek to dely or defer any of the deadlines set forth in the June 28, 2023 Scheduling Order. Indeed, four more months remain in discovery and the late February 2024 trial date is seven months in the future.

**3.      The third factor (repeated failure to cure deficiencies by prior amendments).**

The third Rule 15(a)(2) factor is inapplicable because Mr. Tisdale has not previously sought leave to amend.

**4.      The fourth factor (undue prejudice to the opposing party).**

The fourth Rule 15(a)(2) factor is not present because the proposed amendment does <u>not</u> seek to add any new claims or causes of action.  In fact, *it does exactly the opposite* because it eliminates Tisdale's General Maritime Law negligence claim against his employer and in connection with his recent motion to dismiss eliminates claims against two of the three Marquette defendants.  What remain are the same Jones Act and General Maritime Law claims asserted in the original complaint.[34]

---

[33]See Rec. Doc. 51.

[34]See Rec. Doc. 1 at p. 6, ¶ IX "Third Cause of Action General Maritime Law."

Indeed, the original GML cure claim has also been reduced, and now is just a claim for Marquette to pay for Mr. Tisdale's surgery in accordance with the July 11, 2023 Final Judgment.[35]

Most of the discovery has already been accomplished, the present discovery deadline is December 18, 2023, and trial is set for February 26, 2024. The allegations of fact and law which Mr. Tisdale wishes to present in his proposed supplemental complaint are based entirely of what has been learned during discovery in 2022 before the October 2022 to July 2023 hiatus occasioned by briefing schedules relating to and bench trial of the "back surgery" cure issue. They are not new claims. There simply is no possible prejudice to Marquette, and Mr. Tisdale is still a "ward of the court."[36]

**5.    The fifth factor (futility).**

The fifth Rule 15(a)(2) factor is whether the proposed amendment will be futile. Here, Mr. Tisdale does not seek to assert an impermissible new claim (*e.g.*, a claim under the Longshoremen and Harbor Workers Act). Rather, he simply wishes to present the facts in a chronological fashion because that process will explain how he was injured and the role of Marquette's negligence.

### III.  CONCLUSION

Under Fed. R. Civ. P. 15(a), the Court "should freely give leave [to amend] when justice so requires." Ordinarily, courts grant such requests *unless it appears that amendment would be futile*.[37]

_____

[35]See Rec. Doc. 130.

[36]*Williams v. Trinity Med. Mgmt., L.L.C.,* 331 F.Supp.3d 557, 572 (E.D. La. 2018) (""admiralty courts' tradition of protecting seamen...").

[37]See *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872–73 (5th Cir. 2000) (noting that leave to amend should be freely given when the complaint is subject to dismissal for failure to state a claim unless such leave would be futile); *Davis v. Teva Pharm. USA, Inc.*, No. CIV.A. 13-6365, 2014 WL 4450423, at *4 (E.D. La. Sept. 10, 2014) (noting that courts generally grant leave to amend in the context of judgment on the pleadings for failure to state claim); *Sekil v. ADT Sec. Servs. Inc.*, No. H–08–0510, 2008 WL 4844209, at *3 (S.D. Tex. Nov. 3, 2008)

The text of Rule 15(a)(2) expressly states "The court should freely give [leave to amend] when justice so requires."  Mr. Tisdale respectfully suggests that the interests of justice require a clear and concise, discovery-based recitation of the facts and claims in a new, amended complaint.  He also respectfully suggests that he has shown "good cause" for the amendment under Fed. R. Civ. P. 16(b). For the foregoing premises, Mr. Tisdale respectfully prays that his motion for leave to file his First Amended Complaint for Damages be granted.

Respectfully submitted,

/s/ Richard M. Martin, Jr.
Frank E. Lamothe, III, La. #7495
Richard M. Martin, Jr., La. #8998
Lamothe Law Firm, LLC
400 Poydras Street, Suite 1760
New Orleans, LA 70130
felamothe@lamothefirm.co
rmartin@lamothefirm.com

/s/ Joseph A. LoCoco
Joseph A. Lococo, T.A., La. #17351
Virginia L. LoCoco, La. #18307
LoCoco & LoCoco, PLLC
Post Office Box 6014
10243 Central Avenue
D'Iberville, MS 39540
joseph.lococo@lococolaw.com
virginia.lococo@lococolaw.com

---

(stating that requests to amend pleadings are routinely granted when made in response to a motion for judgment on the pleadings).

## CERTIFICATE OF SERVICE

I **HEREBY CERTIFY** that a copy of the above and foregoing pleading has this day been forwarded to the following counsel of record to this proceeding by electronic transmission, facsimile and/or by depositing same in the United States Postal Service, properly addressed and postage prepaid, this __7th__ day of August, 2023.

_/s/ Richard M. Martin, Jr._
Richard M. Martin, Jr.