# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WILLIAM TISDALE** | **CIVIL ACTION NO:** 2:22-cv-00237-GGG-MBN |
| | **SECTION "T"** |
| **VERSUS** | |
| | **DISTRICT COURT JUDGE:** GREG G. GUIDRY |
| **MARQUETTE TRANSP. CO., LLC** *et al.* | **MAGISTRATE JUDGE:** MICHAEL B. NORTH |

## RESPONSE IN OPPOSITION TO MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT FOR DAMAGES

Plaintiff William Tisdale seeks leave to file an amended complaint.[1] Tisdale's motion comes at a time when significant progress has long-been made in this case. The parties have concluded fact witness depositions; they have exchanged substantial discovery; and, five days before Tisdale filed his motion, Marquette[2] moved for summary judgement dismissing Tisdale's fault claims.[3]

Tisdale does not seek to join any additional parties or to assert a new or different cause of action, which begs the question why an amended complaint is necessary. Tisdale maintains he is simply trying to "clarify" his allegations, but there is no need to file an amended complaint for that purpose, particularly not under the "notice" standard for pleadings in federal court. Marquette is fully aware that Tisdale intends to pursue claims for Jones Act negligence, unseaworthiness and maintenance and cure arising out of his alleged accident while serving as a crewmember of the

---

[1] R. Doc. 133.
[2] "Marquette" refers to the Defendants, Marquette Transportation Company, LLC, Marquette Transportation Company Offshore, LLC, and Marquette Transportation Company Gulf-Inland, LLC.
[3] R. Doc. 131.

M/V ST. JOHN on March 13, 2019. Marquette has already conducted substantial discovery to flush out the bases of his contentions and does not need Tisdale to "clarify" them in an amended complaint.

In reality Tisdale effectively asks this Court to equate second guessing of litigation tactics with Rule 16(b)'s "good cause" requirement. He seeks to change his theory of the case. This would necessarily require Tisdale to contradict his sworn deposition testimony and previous discovery responses, which is improper. Further, his new theory of the case is presented after every fact witness has already been deposed, and many of them are outside the subpoena power of the Court and not under the control of any party.

Faced with analogous circumstances, courts across the country have consistently found that a belated desire to hatch a new litigation strategy after a losing one fails does not amount to "good cause." *See Wonderland Nurserygoods Co. v. Thorley Indus., LLC*, 2014 WL 199789 at * 3-4 (W.D. Penn. Jan. 17, 2014) ("tactical decision" and "strategic mistake does not equate to a showing of good cause under Rule 16"); *Rexnord Indus., LLC v. Bigge Power Constructors*, 947 F.Supp.2d 951, 962 (E.D. Wisc. 2013) ("changing litigation strategies after a previous strategy has failed does not constitute good cause" and because "[e]very district court that has considered the question has concluded that a party's changing its litigation strategy is not good cause for amending a scheduling order under Rule 16(b)(4)."); *Douglas v. Town of Little Elm, TX*, 2010 WL 2307094, at *3 (E.D. Tex. May 7, 2010) (declining to modify the case schedule to "save Plaintiff from the consequences of his own legal strategy").

Marquette therefore opposes William Tisdale's motion for leave to file a brand-new complaint for the reasons the follow.

## BACKGROUND

The background to this litigation warrants a further retelling than Tisdale's Motion for Leave provides.

**A. Procedural And Discovery History.**

On March 13, 2019—over four years ago—Tisdale reportedly injured his low back as he lifted a lock line while performing deckhand work aboard Marquette's towing vessel M/V ST. JOHN (or "Vessel"). He filed this suit on February 3, 2022, claiming Marquette was negligent and its Vessel unseaworthy because "Plaintiff was forced to perform work that was not in his job classification by taking over duties of an absent deckhand, which was the direct cause of the subject accident."[4]

Until now, Tisdale's theory of fault has been just that: Marquette allegedly "forced" him to perform work that was outside of his job duties as a covered steersman. Tisdale himself confirmed as much during his deposition:

> Q. What is it that you are saying Marquette did wrong to cause your incident?
>
> A. I would say that they didn't send a - - they didn't send a deckhand when we got - - the other hand got off the boat because we were sitting there.
>
> Q. Okay. Anything other than failing to send a deckhand?
>
> A. I don't know.
>
> Q. That's the only think you can think of?
>
> A. Right. I mean, I shouldn't have been down there.[5]

And when he was asked in written discovery to describe the facts and circumstances of his accident, Tisdale advanced the same liability theory again:

---

[4] R. Doc. 1 at 4.
[5] R. Doc. 131-2 at 12-13

Plaintiff was in the Steerage Program training for the position of Pilot. His job as a Covered Steersman had no lifting requirements and did not require deckhand duties. Plaintiff states the vessel was short-handed and one deckhand short of a full crew. At the end of Plaintiff's watch, Plaintiff was advised that the crew manager, Brandon Mattei had called Captain Greenhouse and told him they were not sending a deckhand to the boat because the ship was sitting there on standby. <u>At that time the captain told Plaintiff that he would have go and perform the duties of the absent deckhand which was outside of the Plaintiff's job classification.</u> Plaintiff believes that since they were moored, it would have been a simple process to send a deckhand to replace the one that got off the barge. Plaintiff was sent to perform deckhand duties, and as it had been at least six months since he performed the duties of a deckhand, he was deconditioned and not fit for that type of work.[6]

Importantly, Tisdale admitted he was already trained as a deckhand when Marquette hired him, and he knew how to do the work of a deckhand, including the task at hand.[7]

The parties largely completed liability discovery in 2022. Not only did this entail production of thousands of documents, but also depositions of multiple fact witnesses including crewmembers on the ST. JOHN when Tisdale's alleged accident occurred:

| **Deponent** | **Date & Location of Deposition** | |
|---|---|---|
| Jody Williams (ST. JOHN pilot) | 04/29/2022 | Mobile, AL |
| Jarvis Driver (ST. JOHN deckhand) | 08/23/2022 | Mobile, AL |
| Freddie Greenhouse (ST. JOHN captain) | 10/25/2022 | New Orleans, LA |
| Gregory Casnave (Port Captain) | 12/06/2022 | New Orleans, LA |
| Kendall Chauvin (Corporate Rep.) | 12/15/2022 | New Orleans, LA |

Near the end of discovery, on November 9, 2022, Tisdale designated Captain Larry Strouse, an expert witness whose core criticism of Marquette was consistent with the same theory: it should not have asked "Tisdale the steersman" to perform deckhand work after working in the wheelhouse.[8] The parties were working to schedule the depositions of their respective liability

---

[6] Plaintiff's Answers to Interrogatories Propounded by Defendant, Interrogatory No. 3 (**Exhibit A**), underlining added.
[7] R. Doc. 131-2 at 3, 10, 12.
[8] Tisdale's Expert Designation of Captain Larry Strouse at p. 7 (**Exhibit B**).

4

experts when Tisdale filed a motion to bifurcate his claim for maintenance and cure from his liability claims.

The parties disputed "whether Marquette's general maritime law cure obligation requires it to pay for a three-level lumbar spine fusion that ha[d] been recommended by Tisdale's treating physician, Dr. Donald Dietze, or a one-level lumbar spine fusion surgery recommended by Marquette's retained independent medical evaluation physician, Dr. John Davis."[9] This initially prompted Tisdale to file a "Motion to Compel Cure."[10] Days later Tisdale moved to sever his cure claim,[11] thereby mooting the motion to compel cure.[12] Marquette did not *necessarily* oppose Tisdale's request to sever his cure claim but noted that "the Jones Act and unseaworthiness claims would likely need to be continued to allow [Tisdale] time to recover from surgery and determine his work restrictions, if any."[13] On December 19, 2022, the Court agreed to sever Tisdale's cure claim.[14]

On February 27, 2023, the Court held a one-day bench trial on Tisdale's cure claim. At trial, counsel for Tisdale confirmed once again that Tisdale's theory of liability was unchanged. Indeed, counsel's opening statement was largely devoted to explaining how "the duties and job functions of an uncovered steersman versus a steersman" go to the heart of "[Tisdale]'s primary

---

[9] *See* R. Doc. 129 at 1.
[10] *See* R. Doc. 38. In the motion, Tisdale expressed his concerns about the cure dispute, specifically the impact it could have relative to recovering from surgery in time to try his fault claims: "[Marquette's] delay in approving the surgery [recommended by Dr. Dietze] is upsetting the Court's docket, deadlines and trial date. The discovery deadline of December 19, 2022 and trial date of Feb 27, 2022, are fast approaching. It will be impossible to have the Plaintiff recovered from surgery, Dr. Dietze ready to testify with medical certainty as to the outcome of surgery, and Plaintiff's experts to be ready to render solid opinions because of this delay. *Id.* at 4.
[11] R. Doc. 51.
[12] R. Doc. 66; Tisdale's concerns remained: "It behooves this Court to permit this [cure] issue to be resolved post-haste prior to further proceedings regarding" Tisdale's fault claims. R. Doc. 51 at 5.
[13] R. Doc. 69 at 2.
[14] *See* R. Doc. 82.

cause of action in the liability case."[15] Then, on July 11, 2023, this Court rendered its Findings of Fact and Conclusions of Law holding that a three-level fusion was not necessitated by the March 2019 accident.[16] One such Finding of Fact was damning to Tisdale's theory of liability:

> On March 13, 2019, Tisdale was employed by Marquette and working aboard the M/V ST. JOHN as an uncovered steersman.[17]

As an "uncovered steersman," Tisdale would be required to perform the work of a deckhand. Indeed, an "uncovered steersman" is a deckhand who sometimes gets the opportunity to drive the boat, but only when his regular deckhand duties are complete. Whereas, a "covered steersman" is still a member of the deck crew, but there is an extra deckhand on the vessel to cover his deckhand duties for him, such that he can spend more time driving the boat in order to get his license. Here, there was no such "extra" deckhand on the vessel, so Tisdale necessarily was "uncovered." Regardless, even a "covered" steersman is required to perform deckhand duties.

### B. Marquette's Motion For Summary Judgment And Tisdale's Motion For Leave.

As the foregoing history demonstrates, Tisdale's theory of liability has, until now, always been that Marquette is liable because it asked him (and he agreed) to perform deckhand work. On August 2, 2023, Marquette filed a Motion for Summary Judgment on Tisdale's negligence and unseaworthiness claims.[18] Marquette set forth the bases for summary judgment in its supporting memorandum and will not repeat them here.[19] In very brief summary: (i) steersman at Marquette—covered or not—can and will be asked to perform deckhand work, (ii) the task Tisdale was performing was not unsafe, he had done it many times, and he knew how to do it, (iii) no equipment broke or failed, and (iv) the Vessel was never undermanned. In other words, Marquette addressed

---

[15] Trial Transcript at 9 – 18.
[16] R. Doc. 129.
[17] R. Doc. 129 at 2.
[18] R. Doc. 131.
[19] R. Doc. 131-1.

6

all of the theories of liability that Tisdale had presented in his pleadings, his deposition testimony, his discovery responses and even in his liability expert's report. Nothing in the record supports Tisdale's claims for Jones Act negligent or unseaworthiness.

Now, over four years after his accident and eighteen months after he first filed this lawsuit, Tisdale seeks leave to amend his complaint to assert brand new, completely unrelated and contradictory theories of liability—but not different causes of action or different parties.

### LEGAL STANDARD

Under Rule 16(b)(4), a scheduling order "may be modified only for good cause and with the judge's consent." To determine whether a movant has shown good cause under Rule 16, courts may examine four factors: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) the potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 735 (5th Cir. 2018) (quoting *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir. 2003)). The good cause standard focuses on the movant's diligence. *See BLX Com. Cap. LLC v. Bilco Tools, Inc.*, WL 6674848, at *3 (E.D. La. Nov. 24, 2014) (noting "diligence is at the crux of the good cause standard under Rule 16.").

If a movant shows good cause, the inquiry shifts to Rule 15(a). *SBN V FNBC, LLC v. Damon J. Baldone, A Pro. L. Corp.*, 2023 WL 2731706, at *2 (E.D. La. Feb. 8, 2023). A court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "However, it is by no means automatic . . . the decision to grant or to deny a motion for leave to amend lies within the sound discretion of the trial court." *Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 666 (5th Cir. 1981). Courts usually consider five factors when determining whether to

grant or deny leave to amend under Rule 15: (1) undue delay; (2) bad faith or dilatory motive on the part of the movant; (3) repeated failure to cure deficiencies by amendments previously allowed; (4) undue prejudice to the opposing party by virtue of the allowance of the amendment; and (5) futility of the amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Tisdale's motion for leave to amend his Complaint comes fifteen months after expiration of the amendment deadline (and less than a week after Marquette moved for summary judgment). Tisdale must do more than satisfy the standard for amendments set forth in Rule 15(a). He must first meet the requirements of Rule 16(b)(4); that is, he must show "good cause" for the untimely amendment. *See Bellwether Enter. Real Est. Cap. v. Jaye*, 2020 WL 5046488, at *3–4 (E.D. La. Aug. 26, 2020).

## ARGUMENT

This Court's Scheduling Order adopts Federal Rule of Civil Procedure 16(b)(4)'s "good cause" requirement as the standard applicable to Tisdale's request for leave to amend.[20] Amendments to pleadings were supposed to be filed by May 27, 2022. Tisdale filed his motion for leave to amend his complaint on August 7, 2023. Thus, Tisdale must satisfy the good cause standard imposed under Rule 16. As discussed below, Tisdale has not established good cause. For that reason, this Court need not consider Rule 15. But even if good cause did exist, the relevant factors under Rule 15 would still warrant denial of leave.

### A. Rule 16.

Diligence is the crux of Rule 16's good cause requirement. "The good cause standard requires the party seeking relief to show that the deadlines cannot reasonably be met despite the

---

[20] R. Doc. 20 at 5 ("Deadlines, cut-off dates, or other limits fixed herein may only be extended by the Court upon timely motion filed in compliance with Local Rules and *upon a showing of good cause*.") (emphasis added).

diligence of the party needing the extension." *S&W Enters.*, 315 F.3d at 535. In *Coves of the Highland Community Development District*, for example, this Court denied leave to amend under Rule 16(b)(4)'s good cause standard because the movant failed to offer an adequate explanation for missing the scheduling order-deadline for amending pleadings, and the proposed amendment was unimportant because it did nothing more than clarify the plaintiff's operative allegations. *Coves of the Highland Community Development District v. McGlinchey Stafford*, 2011 WL 4478436, at *4-8 (E.D. La. Sept. 26, 2011) (even though leave would not prejudice the defendant and the continuance factor was neutral).

Here, Tisdale has not established good cause under Rule 16. As for factor one, Tisdale appears to predicate his explanation on the notion that "[n]ewly discovered information acquired through discovery . . . constitute[s] good cause for an untimely leave to amend under Rule 16." *Rivera v. Robinson*, 2019 WL 4024939, at *2 (E.D. La. Aug. 27, 2019) (citing *Bayou Liberty Prop., LLC v. Best Buy Stores, LP*, 2015 WL 1415704, at *2 (E.D. La. Mar. 27, 2015)). For example, Tisdale urges that he could not meet the May 27, 2022 amendment deadline because "[d]epositions of fact witnesses" and "the facts needed to underpin the facts to be set forth in the proposed supplemental complaint did not begin to come into [his] possession until at least August [2022.]"[21] Elsewhere, he says that the amendment deadline expired "several months *before* Marquette produced any documents or answers to interrogatories, and was also months before any depositions were taken."[22] He assures this Court that it will "see from a reading of the proposed amended complaint, the factual chronology presented is fully supported by documents (produced by Marquette) and by witness testimony in depositions or the recent bench trial of the cure issue."[23]

---

[21] R. Doc. 133-2 at 7.
[22] R. Doc. 133-2 at 3.
[23] R. Doc. 133-2 at 1.

9

Tisdale's representations are incorrect. The only documents (produced by Marquette) Tisdale used to support his proposed amended complaint are vessel logs that have been in his possession since April 2022, *one month before the May 27, 2022 amendment deadline.*[24] In further contradiction to Tisdale's representations, fact witness depositions also began in April 2022: Tisdale was deposed April 27, 2022, and Jody Williams just two days later.[25] Williams' deposition transcript is the only deposition transcript attached to his proposed amended complaint. Except for the deposition transcript and vessel logs, the only other material attached to the proposed amended complaint is a picture Tisdale drew at his deposition[26] and transcript excerpts from his direct examination at the cure trial[27]—neither of which constitute "newly discovered information acquired through discovery."

Tisdale's reliance on information he obtained in April 2022 demonstrates that he could have pleaded the allegations he wants to plead now by the amendment deadline. His explanation for not doing so "is tantamount to no explanation at all." *S&W Enters.*, 315 F.3d at 536.

Even if Tisdale's account were factually accurate, it would still be self-defeating. If Tisdale did not come into possession of the information necessary for his proposed amended complaint until August 2022, this would at best only excuse his failure to amend before the deadline in the Scheduling Order; but it does not excuse his protracted delay in seeking leave. *See Evans v. TE Ibberson Co.*, 2013 WL 6796717, at *2 (E.D. La. Dec. 20, 2013) ("The fact that Evans only recently became aware of the witness does excuse his failure to include the witness on his original

---

[24] R. Docs. 133-3, 133-4; *compare with* email serving initial disclosures (with disclosures and MARQUETTE 000005-6 (boat logs) (**Exhibit C**)).; Tisdale Deposition at 68:18 – 69:5 (**Exhibit D**); Williams deposition, Exhibits 1 and 3 (**Exhibit E**).

[25] See Tisdale deposition transcript (cover page and signature page reflecting date of deposition) (**Exhibit D**); see Jody Williams deposition transcript (cover page and signature page reflecting date of deposition) (**Exhibit F**).

[26] R. Doc. 133-7.

[27] R. Doc. 133-5.

witness list, but it does not excuse his one-month delay from the time that he discovered the witness.").

The same result follows from Tisdale's claim that "the need to address [ ] the issue of the alignment of the barges was raised for the first time" on December 9, 2022.[28] If Tisdale believed that information warranted amending his complaint, why did he wait nine months to take action? It is no answer for Tisdale to contend "that the entire focus of the litigation [had] shifted to the cure claim,"[29] especially given that Judge Guidry did not sever the cure claim until December 19, 2022.[30]

Roaming even further afield, Tisdale notes that "the Court's trial findings were announced on July 11, 2023" and "that some of those findings now form part of the proposed amended complaint."[31] It should go without saying that a court bases its "findings" on evidence presented by the parties before it—the findings have no bearing on a party's ability to *plead* in a timely manner. Findings necessarily come far after the pleading stage. Tisdale's decision to take a wait-and-see approach only undermines his ability to establish the diligence required for good cause under Rule 16. Any implication that this Court's findings revealed new information supporting "good cause" for leave to amend is absurd. And the fact that Tisdale cited the Court's findings in his proposed amended pleading makes it no less so.[32] Tisdale inadequately explained his failure to timely move for leave to amend. Thus, this factor weighs against a finding of good cause.

---

[28] R. Doc. 133-2 at 3.
[29] R. Doc. 133-2 at 8.
[30] R. Doc. 82.
[31] R. Doc. 133-2 at 8.
[32] Specifically, Tisdale cited the Court's findings for the following propositions in his proposed amended complaint: that jurisdiction and venue are not contested; that Marquette hired him in 2015 as a deckhand and he eventually became a steersman; that he was working as a steersman on March 13, 2019; that Marquette owned the vessel; that the vessel's captain asked him to perform deckhand work; that his injury requires a one-level fusion; that he was a seaman; and that Judge Guidry determined Marquette should pay for the one-level fusion.

11

As for the second factor, Tisdale fails to present any argument as to why his proposed amendment is important. Instead, Tisdale asserts that "without the proposed amendment it will be chronologically unclear (at best) how and when things happened, and how those events gave rise to [his] claims and damages."[33] Tisdale's assertion is not enough to demonstrate the importance of his proposed amendment. In *Coves*, for example, this Court was presented with the exact same argument: "Plaintiff asserts that the purpose of the amendment is to simplify the issues by clarifying Plaintiff's claims . . . so that the trial will be shorter and more efficient." 2011 WL 4478436, at *6. The *Coves* court acknowledged that the proposed amendment "does nothing more than clarify the Plaintiff's current allegations. . . . [it] does not contain new allegations, or broaden the scope of the Plaintiff's current allegations," thus "this factor weighs against a finding of good cause." *Id.* at *6-*7. Like the plaintiff in *Coves*, Tisdale readily admits that his amendment "is not a new claim, it is simply a request to frame the existing claims within the ambit of what is now known about how and why [he] was injured."[34] Tisdale's amendment is not important. This factor weighs against a finding of good cause.

As to factors three and four, Tisdale argues that Marquette will not be prejudiced by the amended complaint because it supposedly alleges things "already known by both sides."[35] Once again, Tisdale's argument only undercuts his ability to establish diligence and begs the question why he did not seek leave earlier in the litigation. Setting that aside, the simple fact is that Marquette would be prejudiced by the amended complaint in more ways than one. To begin with, Marquette moved for summary judgment seeking dismissal of Tisdale's claims as alleged in his operative complaint, because the theory of liability he advanced throughout discovery—that

---

[33] R. Doc. 133-2 at 8.
[34] R. Doc. 133-2 at 8.
[35] R. Doc.133-2 at 9.

Marquette asked him to do deckhand work—had no merit at all. Marquette spent considerable time and resources in preparing its summary judgment motion to dismiss Tisdale's claims. Tisdale's motion for leave is simply reactionary to this Court's finding that he was an uncovered steersman at the time of the incident.

Additionally, Jody Williams and Jarvis Driver have already been deposed. Neither witness resides within the Court's subpoena power, and neither is within the control of Marquette, as they are no longer employed. In the proposed amended complaint, however, Tisdale alleges that Marquette is liable on account of Williams and Driver's actions. For example, he alleges that Williams is at fault for "fail[ing] to prevent [Driver] from hanging the line on a nearby hatch cover clamp instead of removing it to the rake bow of the MTC-1363."[36] He also alleges that Driver failed to perform certain actions like "remov[ing] the line to the rake bow of the MTC-1363 while a safe 6-foot wide deck corridor temporarily existed" and "failed to call for assistance in removing the line while a safe 6-foot wide deck corridor temporarily existed."[37] Until now, Tisdale never premised his liability theories on these arguments, so neither party explored these theories during the depositions of Williams and Driver. Nor could he, and for good reason: Williams explicitly testified that neither he nor Driver did anything wrong to cause Tisdale's injuries,[38] and Driver testified that he had no personal knowledge about Tisdale's accident or how it happened.[39] And when Tisdale himself was asked what went wrong to cause his injury, he simply testified Marquette instructed him (instead of someone else) to perform deckhand work; he said nothing about the actions of Williams and Driver.[40]

---

[36] R. Doc. 133-10 at 11.
[37] R. Doc. 133-10 at 11.
[38] Williams Deposition at 57:4-16 (**Exhibit F**).
[39] Driver Deposition at 21:2 – 22:19 (**Exhibit G**).
[40] Tisdale Deposition at 89:23 – 90:18 (**Exhibit D**).

Marquette's summary judgment motion is on file, and the depositions referred to above are complete. The prejudice to Marquette if Tisdale is allowed to amend his complaint cannot be undone by a continuance. Marquette will be denied the opportunity to examine these two witnesses on a brand new theory of liability that is directly tied to their alleged fault.

Tisdale has failed to demonstrate good cause under Rule 16. For that reason, this Court should deny Tisdale leave to file his proposed amended complaint.

B. **Rule 15.**

This Court need not consider Rule 15 because Tisdale did not demonstrate the good cause required by Rule 16. In any event, the Rule 15 factors do not support allowing Tisdale leave to amend.

As noted above, leave to amend may be denied for "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , and futility of the amendment." *N. Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*, 898 F.3d 461, 477 (5th Cir. 2018) (internal quotation marks omitted).

Tisdale filed his motion for leave to amend eighteen months after this case began, fifteen months after the amendment deadline, and five days after Marquette moved for the summary judgement. Tisdale based his proposed amended complaint on documents he received from well-over a year before his motion for leave. Undeterred, Tisdale argues undue delay has not occurred because "facts established by depositions were not available until months had passed after the amendment deadline."[41] Again, Tisdale's premise is wrong. Jody Williams was deposed on April 29, 2022; the amendment deadline set by this Court was May 27, 2022. This left Tisdale ample

---

[41] R. Doc. 133-2 at 10.

14

time to amend his complaint in a timely manner if he felt Williams' testimony warranted it, but he chose not to because that was not his theory of liability at the time. Here too, Tisdale points to the fact that this Court's "findings of fact and conclusions of law for the 2023 cure trial were unavailable until the Court issued its opinions on July 11, 2023[,]"[42] but he does not identify a single finding or conclusion that justified his delay for seeking to amend.

Tisdale's delay is undue because it unduly prejudices Marquette. As courts in this circuit have recognized, "motions to amend should also be scrutinized more carefully where, as here, the motion to amend comes after the opposing party has filed a motion for summary judgment." *Austin v. Mariner Health Care, Inc.*, 226 F.R.D. 548, 550 (N.D. Miss. 2005) (citing *Parish v. Frazier*, 195 F.3d 761, 764 (5th Cir.1999)). In *Parish*, the plaintiff filed her motion to amend on the same day defendants filed their dispositive motion, and the Fifth Circuit upheld the district court's finding that granting her motion would likely prejudice the defendants by requiring additional discovery and another motion for summary judgment." *Parish*, 195 F.3d at 764; *see also Mayeaux v. Louisiana Health Serv. & Indem. Co.*, 376 F.3d 410, 426-27 (5th Cir. 2004) (noting that "Plaintiffs' motion was certainly 'untimely' in light of the procedural history and posture of the case. . . . seeking leave to assert these amended claims, which—if granted—would work a massive change in the nature and direction of the case."). The same is true here. Allowing Tisdale leave to amend would undoubtedly prejudice Marquette by requiring additional discovery—he will certainly demand Marquette undergo a second corporate deposition at the very least—and a second motion for summary judgment tailored to the newly minted bases of negligence and unseaworthiness Tisdale alleges. Thus, the first and fourth factors under Rule 15 warrant denying Tisdale's motion.

---

[42] R. Doc. 133-2 at 10.

As to the second factor, Marquette submits that it is apparent that over eighteen months into the lawsuit, and over four years after the March 2019 incident, Tisdale realized that his original theory of liability would not work—that is, this Court has explicitly found that "[o]n March 13, 2019, Tisdale was . . . working aboard the M/V ST. JOHN as an uncovered steersman."[43] Tisdale's motion for leave to amend is purely a reaction to that finding. This is only bolstered by the fact that the alleged discovery Tisdale says justifies his motion has been in his possession for at least nine months.[44]

Tisdale does not brief the third factor, and the fourth factor, discussed previously (undue prejudice), supports denial. The remaining factor, futility, also supports denial. Indeed, Tisdale states that "he simply wishes to present the facts in chronological fashion because that process will explain how he was injured and the role of Marquette's negligence."[45] If that is all Tisdale intends to accomplish, then amending his complaint is not necessary to achieve those ends—particularly when the depositions he says he needs have long-been concluded. The proposed amended complaint is not itself evidence, nor is it a basis to defeat summary judgment. Tisdale can argue everything in the proposed amended complaint without a formal filing, but he cannot use the amendment as an excuse for a do-over on discovery, which is his true goal in seeking the amendment. Simply put, everything Tisdale says the amended complaint would accomplish merely demonstrates that the amendment itself is not necessary.

## Conclusion

This Court should see Tisdale's motion for what it is: a belated attempt to hatch a new litigation strategy after a losing one failed. This is a far cry from demonstrating the good cause

---

[43] R. Doc. 129 at 2.
[44] R. Doc. 133-2 at 3 (referring to Marquette's expert report he received December 9, 2022, that brought "to light" "the issue of the alignment of the barges[.]").
[45] R. Doc. 133-2 at 12.

required under the scheduling order and Federal Rules of Civil Procedure. There is no reason for the amendment because Tisdale does not seek to add a party or assert a new cause of action, and an amendment should not justify re-examining witnesses who have already provided deposition testimony, particularly not after Marquette has already filed a Motion for Summary Judgment. For all the reasons above, this Court should deny Tisdale's motion.

Respectfully submitted,

BY: LUGENBUHL

*/s/ Carter L. Sayers*
Todd G. Crawford, T.A. (La Bar No. 20150)
Carter L. Sayers (La Bar No. 38887)
LUGENBUHL, WHEATON, PECK,
RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, LA 70130
Telephone: 504-568-1990
Facsimile: 504-310-9195
Email: tcrawford@lawla.com
Email: csayers@lawla.com
*Attorneys for Marquette Transportation Company, LLC, Marquette Transportation Company Gulf-Inland, LLC and Marquette Transportation Company Offshore, LLC*