**BOWLEY INC.**

*FORENSIC • MEDICAL DEVICES • CONSUMER PRODUCTS • PATENT INFRINGEMENT • ENGINEERING & REVERSE ENGINEERING • 3D SCAN, DESIGN & PRINT SERVICES • DRONE AERIAL MAPPING • HISTORIC PRESERVATION & ARCHEOLOGY • EDUCATION • ANIMATIONS & ILLUSTRATIONS • RESEARCH & DEVELOPMENT*

CONNECTICUT OFFICE (HQ)
1206 STORRS RD STE C
SUITE 307
MANSFIELD, CT
06268

NORTHERN CA OFFICE
773 E. EL CAMINO REAL
SUITE 151
SUNNYVALE, CA
94087

MARYLAND OFFICE
325 ELLINGTON BLVD.
SUITE 156
GAITHERSBURG, MD
20878

2 November 2023

Richard M. Martin, Jr. Esq.
Lamothe Law Firm
400 Poydras St., Suite 1760
New Orleans, LA 70130

***Our Case Number: 223015 Tisdale v. Marquette Transportation***

Dear Attorney Martin,

Per your request, this report provides information and opinions to address issues for this case related to injury causation biomechanics. This case involves the 13 March 2019 personal injury accident wherein Mr. William Tisdale (Male, DOB = 3/07/75, HT = 6’3” or 75-inches, WT = 229#) was working as a deckhand on a tugboat (M/V St. John) that was moving “hopper barges” (200 feet long, 50 feet wide) on the Port of Houston, Greens Bayou or the Huston ship channel. At approximately 4:45pm in the rain, Mr. Tisdale was ordered to remove a rain-soaked rope (“lock line”) located on one of the barges (MTC 1363) and bring it to the tugboat. The 2-inch diameter rope was approximately 120 feet in length, weighed approximately 98 pounds, and was coiled over a “cover clamp” located at approximately 68-inches or 5’8” in height above the barge deck.

*+01.800.273.5170 US/CANADA*
*888.432.3584 FAX*
BOWLEYCONSULT.COM | 3DSCANARCHIVE.COM
BOWLEYCONSULTING@GMAIL.COM

EXHIBIT 1

# BOWLEY INC.

***FORENSIC • MEDICAL DEVICES • CONSUMER PRODUCTS • PATENT INFRINGEMENT • ENGINEERING & REVERSE ENGINEERING • 3D SCAN, DESIGN & PRINT SERVICES • DRONE AERIAL MAPPING• HISTORIC PRESERVATION & ARCHEOLOGY• EDUCATION • ANIMATIONS & ILLUSTRATIONS • RESEARCH & DEVELOPMENT***















**<u>Diagrams and Images depicting “hopper barges” such as the one involved in this accident (SM Bowley research).</u>**

## Background

Mr. Tisdale was working on a tugboat (M/V St. John) that was moving “hopper barges” on the Port of Houston, Greens Bayou or the Huston ship channel on the day of the injury. He was injured and felt “a pop” while attempting to move wet rope bundle (“lock line”) located on one of the barges (MTC 1363) back to the tugboat.

The 2-inch diameter rope was approximately 120 feet in length, weighed approximately 98 pounds, and was coiled over a “cover clamp” located at approximately 68-inches or 5’8” in height above the barge deck.

Mr. Tisdale immediately fell to his knees in extreme pain after feeling the “pop” in his lower back. He was assisted onto the tugboat that evening and was not seen by a healthcare provider until the next day.

## Analysis

### *Accident Reconstruction*






**Photographs 1-2: 10/26/23 Scene Inspection. Left: Barge MTC 1363, Right: Representative type of rope involved in injury (much smaller length and bundle).**





**Photographs 3-5: 10/26/23 Scene Inspection. Left and Center: "Cover clamp", Right: Cover clamp at site of incident.**




**Photographs 6-7: 10/26/23 Scene Inspection. Left: Mr. Tisdale at location on barge where injury occurred, Right: Area in front of cover clamp where Mr. Tisdale was standing when injured.**

The Marquette Transportation Company manual for Deckhands indicates the limits for lifting and working as a deckhand (*Tisdale Deposition Exhibit #5, Bates Stamp Marquette 001771-001773*):

> *"**Lifting: (Frequent)** Deckhand must be able to lift wrenches and cables **weighing up to 70 pounds from a ground/floor height to a height of 60 inches** throughout the vessel and barges."*

> *"**Trunk Rotation: (Frequent)** Deckhand must be able to rotate their trunk/torso left-right to complete various duties such as building/checking tow, transporting pumps, moving/stacking rigging, complete daily/periodic cleaning and maintenance tasks."*

This clearly states that frequent lifting of items weighing less than 70 pounds and less than 5-feet above deck is necessary for a deckhand, the job function that Mr. Tisdale was performing at the time of the injury.

Furthermore, NIOSH (National Institute for Occupational Safety and Health) has a long history of research and publications clearly warning against manual lifting of heavy items at a significant height. Factors contributing to back injuries from lifting include: the amout of load/weight, the location of the center of gravity of the load relative to the workers center of gravity, frequency of lifting the load, stability of the location of the load's center of gravity, constraints on space and posture, and enviornmental factors.

<u>The Deposition of pilot Jody Williams indicated the line Mr. Tisdale was lifting was a 2-inch diameter line and 120 feet long:</u>

<u>p.37, L7-10:</u>

*" 7 Q Okay. Now, at the moment of*
*8 Mr. Tisdale's injury, what was he doing?*
*9 A* ***He was lifting some rope off the***
***10 combing."***

<u>p.38L1-23:</u>

*" 1 Q Okay. Now, the rope that we're talking*
*2 about, what kind of rope was it, if you know?*
*3 A He was moving a -- it was called --* ***it***
***4 was one of our lock lines. It's a slightly***
***5 larger, stronger rope than you usually lash the***
***6 barges with. It's what we use when we go in the***
***7 locks or you tie up on the buoys.***
*8 Most of the lines we use are those*
*9 polypro, polypropylene. I guess they call them*
*10 tiger tails. They're black and yellow."*
*11 Q Okay.*
*12 A It's a very light line.*
*13 Our lock lines, buoy lines, are*
*14 substantially stronger, and they weigh more*
*15 lines. They're heavier -- they're stronger*
*16 lines.*
*17 Q Okay.* ***What are the lock lines made out***
***18 of? Are they polypropylene also?***
***19 A No, sir. No. They're cotton***
***20 Dacron-type line.***
***21 Q And about how big would they be,***

***diameter-wise?***
***A Inch and a half, two-inch."***

<u>p.40, L513:</u>

*" Do you know whether this particular*
*line was an unusually long line, like you just*
*described, or do you not know?*
*A I know that it was a larger -- it was*
*one of our larger lines.*
*Q A larger-around line?*
*A No, not large -- it just had more rope*
*in it. Most of them are a hundred, and* ***I want to***
***say that one's like a hundred and twenty."***

<u>p.45, L3-5:</u>

*"* ***Q Okay. Did you have a clear,***
***unobstructed view of Mr. Tisdale?***
*A Yes, I did."*

From the testimony of Mr. Williams and using a rope specification sheet (*Gator Supply Company*) indicating a 2-inch diameter rope weighs 81 pounds per 100 feet with a 0-1% water absorption, the weight of the wet rope bundle Mr. Tisdale lifted on the day of the injury was approximately 98 pounds.

**<u>Opinion 1: The wet rope bundle Mr. Tisdale lifted on the day of the injury weighed approximately 98 pounds.</u>**

Furthermore, using measurements from the site inspection on the barge of Mr. Tisdale and the location of the injury, the location of the rope bundle spanned approximately 80 inches in height (above the barge deck), approximately 3 feet in width, and approximately 1.5 feet in depth.

**Opinion 2: The wet rope bundle Mr. Tisdale lifted was at a height of approximately 80 inches or 6-feet 8-inches above the deck.**

**Opinion 3: The wet rope bundle exceeded the weight (70 pounds) and height (60 inches or 5-feet) limits/thresholds for a deckhand per the Marquette Manual.**

Additionally, the dimensions from my scene inspection were used to estimate the center of gravity (CG) of the rope bundle (see ***Diagram 1***).




**Diagram 1 – S.M. Bowley Work-up Notes**

**Opinion 4: The rope bundle CG was located at approximately 11 inches in front of Mr. Tisdale's body, and ~48 inches in height above the barge deck.**

***Injury Causation***

Testimony from Jody Williams describes how he witnessed Mr. Tisdale lifting the rope bundle from the tugboat wheelhouse:

p.46, L17-22: *"To pick this bunch of line up,* ***you've kind of got to bear hug it because you've got to lift the line, you know, and it's easier to grab it in a big bundle and just lift up so you can get it off that hook it's on****."*

p.48, L6-10: *"…when he picked his load up, he --* ***he was kind of in a tight spot. And when he went to turn, he just stopped and then put the line back down*** *and just looked up at me with this kind of pitiful look on his face."*

Testimony from William Tisdale describes how this lifting injury happened:

p.85, L13-25 and p.86, L1-13:

*"13 Q. Okay. At the time that you were going to*
*14 mess with that lock line, though,* ***it had already***
***15 been picked up, rolled up, tied together and then***

***placed on a cover; is that right?***
*A.* ***Yes. It was coiled up on a cover top, which was approximately the same height as my shoulder. So when I picked it up I was standing up. I wasn't, like, bent over or anything like that.***
***And I picked it up off of the barge, transitioned it to my other shoulder because our policy is to carry your rigging on the outboard edge of the barge, reason being for safety purposes. If you were to slip or something, they want whatever you're carrying to fall into the water versus --***
***Q. You falling into the water.***
***A. -- the employee.***
*So I picked it up, transferred it to this side of my shoulder. And as --*
*Q. "This side" won't show on your --*
*A. Oh, I'm sorry.*
***Q. It would be on your left side, going from the right to the left?***
***A. No, it would have been from my left to my right shoulder."***

<u>p.87, L15-25:</u>

*"A. So I'd have walked down -- the boat was facing the head of the barge. So I got off the boat. If this piece of paper was the barge, the boat is facing this way, I got off, we were working on the outside right here.*
***The line was hanging on the cover top. I went to pick it up off the thing because it's heavy. I mean, it weighs 80 to a hundred pounds easily when it's dry. Picked it up, went to put it on my shoulder and that's when my back and everything popped."***

<u>p.112, L5-25 and p. 113, L1-12:</u>

*"A. No,* ***I was facing towards the line.***
*Q. Okay.*
*A. The line was hanging up shoulder -- can I stand up?*
*Q. Yeah, yeah.*
***A. So you have a walkway maybe as wide as this table. The line is hanging up shoulder***

***height, probably about right here.*** *I came from the head of the tow because we stack all our rigging up on the front of the barge so we can lift it up onto the boat.*
***I walked down the barge. The line's here, went to pick it up to put it on my shoulder like this and it -- I buckled.***
***Q. So right as you were picking it up is when you felt the pain?***
***A. Correct.***
*Q. Okay. All right. I got it.*
***And where exactly did you feel the pain when you felt it?***
***A. My lower back, whole, like, lower back/ hip area.***
*Q. And in the middle, on one side or the other?*
*A. Yes, sir, I believe it was on the right side mostly, but it's the whole -- I mean, the whole thing hurt.*
*Q. Okay. And then how long -- wait.* ***On a scale of one to 10 in that initial moment, where would you say the pain was?***
***A. About 25.***
***Q. It was excruciating?***
***A. Yes."***

<u>p.118, L14-25:</u>

***"Q. Before March 13, 2019 -- excuse me, I said 2020. Before March 13, 2019, had you ever sustained any injury to your back?***
***A. Not that I recall, no.***

<u>p.201, L20-25 and p. 202, L1-9:</u>

***Q. And what were the weather conditions on that day? Was it raining?***
***A. Pouring down raining.***
***Q. Pouring down raining?***
***A. Yes, sir.***
***Q. So the deck was wet?"***
***A. Yep.***
*Q. And what were you wearing? Were you wearing a wetsuit or anything, like, a slicker?*
*A. No, uh-uh.*
*Q. Just --*

***A. No, sir. I was wearing long pants, steel toe boots, a shirt and a work vest.***
***Q. And so you're soaking wet?***
***A. Correct.***

Tisdale Exhibit #3 – Personal Injury/Illness Report:

*"**WHILE PICKING UP A LOCK LINE** ON THE MTC-1363 **FROM THE STB SIDE OF THE TOW MY LOWER BACK/HIP POPPED ON THE RIGHT SIDE.**"*

Tisdale Exhibit #4 – 11/8/21:

"**At approximately 4:45 p.m., I was working in a narrow passageway on the side of the barge, MTC 1363. The lock line was coiled and hanging at shoulder height, hanging from the cover top barge. I estimate the line weighed over 100 pounds. It was raining and the line was saturated. I placed the lock line onto my right shoulder and attempted to shift the line to my outbound shoulder, which is an awkward lifting and turning. When I shifted the line to my outboard shoulder, I felt a pop in my low back and my back gave out. I immediately felt excruciating pain in my low back.**"

Tisdale Exhibit #6 – Drawing of location of tugboat and where injury occurred:



The rope bundle was a very large, bulky (not compact), and cumbersome weight of coiled rope placed over the barge cover clamp. Even in the best circumstances using the recommended safe lifting body posture, this type of heavy and bulky rope bundle presents a very unwieldy and difficult object for one person to safely maneuver.

The barge deck pathway on one side of the cargo cover was a very narrow confined area with limited mobility for working and included multiple trip hazards. The open water next to the barge necessitated him to maintain his center of gravity inboard at all times or flexed slightly forward.

Information reviewed and analyses performed indicate that Mr. Tisdale's movement to lift the 98-pound rope bundle would have involved the following (refer to *Animation Graphics*):

1. Facing the rope bundle and leaning forward to maintain stability on deck




2. Bear-hug the rope bundle with both hands by bending forward in flexion (from hips)
   a. The center of gravity (CG) of the rope bundle slightly offset to his left.



3. A “slinging motion” – one fluid motion:
    a. Vertical movement of the rope bundle to clear the top of the cover clamp and extension of the spine
    b. A “twisting” or axial rotation of the shoulders and torso
        i. Left rotation of the shoulders by approximately 20 degrees left to position and lower right shoulder to insert his right hand through the rope bundle coils
        ii. Right rotation of the shoulders by approximately 45 degrees (total rotation of approximately 65 degrees) once rope bundle coils are on the right shoulder in preparation for walking towards the bow of the barge

Immediately felt a “pop” and severe pain, falling to his knees and dropping the rope bundle onto the barge deck in front of his body












Medical records from an MRI Mr. Tisdale received on **25 March 2019** (Lisa Smith, M.D.) indicated a lumbar spine injury to L3/L4, L4/L5 and L5/S1. The MRI interpretation noted "*At **L3-L4** **moderate** **disc height loss** and degenerative changes result on moderate to severe right and moderate left foraminal narrowing, severe latera recess narrowing and mild-to moderate central canal stenosis.* ***Compression of the left L3 nerve within the foramina.***"; "***L4-L5 moderate bilateral foraminal narrowing, greater on the right than the left***"; "*L2-L3 and L4-S1, mild bilateral foraminal narrowing*"; "***L5-S1: there is a focal increased T2/STIR signal within the peripheral right posterior disc, suspicious for annular tear***", among other findings.




**Representative MRI Images from 25 March 2019 for Mr. Tisdale**







**<u>Anatomy images depicting normal spine (Anatomy textbook).</u>**

After review of the medical records and performing an injury causation biomechanics analyses of this accident, multiple unsafe lifting conditions were present on the day of Mr. Tisdale's injury:

1) the very heavy and unwieldy rope bundle (~98 pounds),
2) the height of the rope bundle above deck (6-ft 8-inches, or 80 inches),
3) the very limited space available to position his body and maneuver the very heavy rope bundle in a safe manner,
4) the rope bundle secured over the top of the cover clamp hook, and
5) the wet deck surfaces.

**<u>Opinion 5: multiple unsafe lifting conditions were present on the day of Mr. Tisdale's injury: 1) the very heavy and unwieldy rope bundle (~98 pounds), 2) the height of the rope bundle above deck (6-ft 8-inches, or 80 inches), 3) the very limited space available to position his body and maneuver the very heavy rope bundle in a safe manner, 4) the rope bundle secured over the top of the cover clamp hook, and 5) the wet deck surfaces.</u>**

Calculations were performed to determine the approximate compressive loading on the spine, which indicated approximately 1,078 pounds of compressive load was experienced on the spine. This is approximately 300 pounds higher than the deckhand manual specifications for a lifting limit. However, data indicates that lumbar discs ultimate compression loading to failure is well above 1,078 pounds at 3,371 pounds. Additionally, data for lumbar disc torque failure indicates an ultimate angle of twist of 13 degrees would cause disc failure after complete failure of zygapophyseal joints. This analysis indicates that the axial rotation of 65 degrees with a load of 98 pounds on the right shoulder could easily cause at least soft tissue damage to the lumbar spine.

**Opinion 6: The large axial rotation during the lifting motion, while supporting 98 pounds of weight on the right shoulder could easily cause at least soft tissue damage to the lumbar spine.**

**Conclusions/Opinions**

From the materials reviewed and the analyses performed, I have reached the following conclusions:

- **Opinion 1: The wet rope bundle Mr. Tisdale lifted on the day of the injury weighed approximately 98 pounds.**
- **Opinion 2: The wet rope bundle Mr. Tisdale lifted was at a height of approximately 80 inches or 6-feet 8-inches above the deck.**
- **Opinion 3: The wet rope bundle exceeded the weight (70 pounds) and height (60 inches or 5-feet) limits/thresholds for a deckhand per the Marquette Manual.**
- **Opinion 4: The rope bundle CG was located at approximately 11 inches in front of Mr. Tisdale's body, and ~48 inches in height above the barge deck.**
- **Opinion 5: Multiple unsafe lifting conditions were present on the day of Mr. Tisdale's injury: 1) the very heavy and unwieldy rope bundle (~98 pounds), 2) the height of the rope bundle above deck (6-ft 8-inches, or 80 inches), 3) the very limited space available to position his body and maneuver the very heavy rope bundle in a safe manner, 4) the rope bundle secured over the top of the cover clamp hook, and 5) the wet deck surfaces.**
- **Opinion 6: The large axial rotation during the lifting motion, while supporting 98 pounds of weight on the right shoulder could easily cause at least soft tissue damage to the lumbar spine.**

The conclusions and opinions contained in this report are based upon review of the material and information provided thus far. As the discovery process continues, and additional information becomes available, subsequent reports and opinions may be provided.

If you have any questions, or if I can be of further assistance, please do not hesitate to contact me.

Sincerely,

Susan M. Bowley

Susan M. Bowley, Ph.D.
Mechanical & Biomedical Engineer

Appendix – Information reviewed to date:

- Doc. No. 110 - Plaintiffs' Pre-trial Memo
- Doc. No. 117 - Plaintiffs' Post Trial Memo
- Doc. No. 135 – Plaintiffs' Response to Marquette Motion for Summary Judgment
- William Tisdale Deposition Exhibit #12, Captain Larry Strouse Affidavit, 8/18/23
- Trial transcript, 2/27/23
- Deposition of Captain Freddie Greenhouse, 10/25/22
- Deposition of Donald D. Dietze, M.D., 10/26/22
- Deposition of Gregory Casanave, 12/6/22
- Deposition of Jarvis Driver, 8/23/22
- Deposition of Jody Williams, 4/29/22
- Deposition of John Steen, M.D., 9/27/22
- Deposition of Lisa Smith, M.D., 1/19/23
- Deposition of Mark Wall, M.D., 12/1/22
- Deposition of William Tisdale, 4/27/22
- Marquette Transportation Company manual for Deckhands – Tisdale Deposition Exhibit #5, Bates Stamp Marquette 001771-001773
- Medical Records for Mr. Tisdale
- Personal Scene Inspection (photos, video, and 3D laser scans) with Mr. Tisdale present, 10/26/23
- Gator Supply Company, 3-Strand Lock-line specification sheet
- Reference books:
  - "*Injury Causation Analyses: Case Studies and Data Sources*", Damask A.C., and Damask J.N., The Michie Company, 1990
  - "*Winter's Biomechanics and Motor Control of Human Movement*", 5th Edition, Thomas, S.J., Zeni, J.A., and Winter, D.A., Wiley, 2023
  - "*Anatomy: A Regional Atlas of the Body*", 5th Edition, Clemente, C.D., Lippincott Williams & Wilkins, 2007.
  - "Forensic Biomechanics", Hannon P. and Knapp, K., Lawyers & Judges, 2008
  - "Accidental Injury, Biomechanics and Prevention", 2nd Ed, Nahum, A.M. and Melvin, J.W., Springer, 2002
  - NIOSH [1994]. Applications manual for the revised NIOSH lifting equation. By Waters TR, Ph.D., Putz–Anderson V, Ph.D., Garg A, Ph.D. Cincinnati, OH: U.S. Department of Health and Human Services, Centers for Disease Control and Prevention, National Institute for Occupational Safety and Health, DHHS (NIOSH) Publication No. 94-110 (Revised 9/2021), https://doi.org/10.26616/NIOSHPUB94110revised092021.
  - NIOSH [1981] Work practices guide for manual lifting,
- Reference journal articles – see files