UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WILLIAM TISDALE** | **CIVIL ACTION** |
| **v.** | **NO: 22-237** |
| **MARQUETTE TRANSPORTATION COMPANY, LLC ET AL.** | **SECTION: T (5)** |

### ORDER

Before the Court is a Motion for Summary Judgment filed by Defendant Marquette Transportation Company Gulf-Inland, LLC (R. Doc. 131) seeking summary judgment in its favor as to Plaintiff William Tisdale's negligence and seaworthiness claims. Plaintiff has filed a response in opposition (R. Doc. 135), to which Defendant has filed a reply (R. Doc. 145). Both Plaintiff and Defendant filed additional briefing with leave of court (R. Docs. 172 and 178). For the reasons set forth below, the Court will deny the Motion for Summary Judgment.

BACKGROUND[1]

Plaintiff is a resident of Mississippi who was employed by Defendant, which is incorporated in Delaware, on March 13, 2019. On that date, Plaintiff was assigned to the M/V ST JOHN, owned by Defendant, working as an uncovered steersman in waters near the Houston Ship Channel. He was instructed by the captain of the M/V ST JOHN, Captain Freddie Greenhouse, to perform certain deckhand work as the vessel conducted barge fleeting work. Plaintiff was injured when he picked up a lock line on the starboard side of a barge in the ST JOHN's tow, the MTC-1363, and felt a pop in his lower back/hip on his right side. Plaintiff reported the accident

---

[1] This information is taken largely from the Complaint (R. Doc. 1) and the Court's Findings of Fact & Conclusions of Law (R. Doc. 129), following the trial on the severed issues of maintenance and cure held on February 27, 2023.

immediately after it occurred, and a "Personal Injury/Illness Report" was completed. Plaintiff received an ice pack and over-the-counter medication to help with his back pain after the accident. He did not perform any work on the vessel after the accident. Plaintiff underwent further treatment as set forth in the Court's Findings of Fact & Conclusions of Law (R. Doc. 129).

Plaintiff filed suit against Defendant in February of 2022 under the Jones Act and general maritime law, alleging his injury and damages were due to the negligence of the defendant and the unseaworthiness of its vessel. He asserted (1) the vessel was short-handed because it was one deckhand short of a full crew; (2) the captain ordered him to perform the duties of the absent deckhand and to work outside his job classification; and (3) he was not fit for that type of work because he had become "deconditioned" after many months of not performing such type of work. R. Doc. 1, p. 3. He also claimed (1) that he had been working in a narrow passageway on the side of the barge, MTC-1363; (2) that the lock line he was ordered to move was coiled and hanging at shoulder height from the cover top barge; (3) that the lock line weighed over 100 pounds and was saturated from the rain; and (4) that, when he lifted and carried the lock line, he felt a pop in his lower back, which then gave out with excruciating pain. R. Doc. 1, p. 4.

Plaintiff asserted various bases for negligence, including (1) negligence in ordering Plaintiff to perform work outside of his job classification; (2) negligence in failing to provide a seaworthy vessel and adequate crew; (3) failure to provide proper safety equipment and appurtenances; (4) exposing Plaintiff to unreasonable risk of injury and harm while serving aboard the vessel; (5) not providing Plaintiff with enough equipment, assistance, and manpower to do the tasks assigned; (6) failure to warn Plaintiff of dangers and needlessly exposing Plaintiff to nonapparent dangers; and (7) negligence implied in these allegations and those that may be shown at trial on the merits. R. Doc. 1, p. 5. He asserted similar bases for unseaworthiness, including: (1)

defective machinery equipment and appurtenances; (2) furnishing an undermanned vessel, failing to man and crew the vessel properly; (3) vessel not properly equipped; (4) inadequate equipment and safety devices, (5) unsafe conditions aboard the vessel; (6) inadequate or non-existent communication devices to warn Plaintiff of dangers; and (7) unseaworthiness implicit in these factual allegations and those to be shown at trial on the merits. R. Doc. 1, p. 6.

Defendant has filed a Motion for Summary Judgment (R. Doc. 131) asserting Plaintiff cannot on these facts establish his claims of negligence or unseaworthiness. Defendant argues Plaintiff's negligence claim does not allege an unsafe condition of the ST JOHN or that he was subjected to any unsafe working conditions at all. Pointing to Plaintiff's deposition testimony, Defendant asserts (1) Plaintiff did not believe the task he was assigned was unsafe or unreasonable; (2) it was a one-man task Plaintiff had performed many times before; and (3) Plaintiff acknowledged that retrieving rigging is an ordinary, routine task he knew how to do and that the task itself was not unsafe. R. Doc. 131-1, p. 6. Instead, Defendant argues, Plaintiff's theory is that it was negligence to ask him to do deckhand work and to allow him to do so after he had agreed without objection. Thus, Defendant points out, Plaintiff's theory of fault has nothing to do with whether he was provided a safe place to work, whether the task he was assigned was unreasonably dangerous, or whether he was provided the tools, equipment, or manpower to perform the job safely. R. Doc. 131-1, p. 7. Defendant asserts summary judgment is warranted because he seeks a standard of perfection, not ordinary prudence, and because a Jones Act employer is not negligent for asking a seaman to perform normal, routine, non-dangerous tasks.

Similarly, Defendant asserts Plaintiff cannot establish that the vessel owner failed to provide a seaworthy vessel. Defendant maintains there is no evidence that the vessel's gear was defective, that its equipment failed, that retrieving rigging is an unsafe method of work, or that it

3

was otherwise unreasonably fit for its intended use. Defendant contends the undisputed evidence shows that the vessel was adequately manned and that it had more crewmembers than were necessary to operate the tug, even if not enough to allow Plaintiff to work as a "covered" steersman.[2] Defendant argues Plaintiff's deposition testimony does not establish that the ST JOHN had an unsafe work condition or that anything was wrong with the rigging he was tasked to pick up. Thus, Defendant argues, there is no proof that an unseaworthy condition existed or that such a condition played a substantial role in causing his injury. R. Doc. 131-1, p. 12. Defendant contends it is therefore entitled to summary judgment on the unseaworthiness claim.

Plaintiff counters that there were additional critical facts learned during discovery that support his claims that Defendant was negligent (1) in exposing him to an unreasonable risk of injury and harm while serving aboard the vessel, (2) in not providing him with enough equipment, assistance, and manpower to do the tasks assigned, and (3) in failing to warn him of dangers and needlessly exposing him to non-apparent dangers. R. Doc. 135, p. 2 (referring to Paragraph IX, sub-parts f-h, of the original Complaint, R. Doc. 1). Plaintiff first points to the configuration of the tug and its tows, noting that, contrary to the deposition testimony of Pilot Jody Williams that there were barges breasted at the time of the accident, which he believed allowed Plaintiff sufficient room to perform the assigned task, the Daily Boat Log established that, at the time of the accident, the MTC-1363 and the ST JOHN were made up bow-to-bow to facilitate transfer of the rigging from the rake bow of the barge to the vessel, thereby causing Plaintiff to stand amidship on the starboard side of the barge, which was exposed to open water, and facing its bow and the bow of the faced-up vessel. Plaintiff next points to the discovery of Defendant's lifting limits, as outlined in its "Deckhand Duties, Responsibilities and Physical Demands of the Job," R. Doc. 135-2.

---

[2] As Defendant points out, this Court has concluded Plaintiff was an "uncovered steersman" at the time of the accident. *See* R. Doc. 129.

Plaintiff contends he was unaware of Defendant's lifting limit of 70 pounds from more than a 60-inch height. Plaintiff relies on his Declaration, R. Doc. 135-11, and this discovery, to support his claims that, while the general task of moving rigging might be generally safe, Plaintiff was instructed to remove and carry a wet line the pilot knew weighed more than 100 pounds. He contends the pilot was responsible for his safety and should have been trained as to Defendant's 70-pound lifting limit for deckhands. Before the barges were separated, he asserts, the on-duty deckhand negligently left the heavy line atop a barge hatch cover instead of moving it the bow of the barge. The pilot failed to intervene, Plaintiff asserts, and the result was separation of the breasted barges and the loss of the six-foot wide "alley" created by their adjacent decks. In addition, the 6 foot, 3 inch tall Plaintiff points out, this left a 100 plus pound unwieldy line hanging at his shoulder height, which was above Defendant's 60-inch height lifting limit, preventing Plaintiff or anyone else from using a safe lifting technique. Thus, Plaintiff contends, he was forced to undertake this unsafe task while standing on the two-foot-wide, wet starboard deck of the barge with open water at his back. R. Doc. 135, p. 3.

Defendant replies, arguing that Plaintiff's affidavit should be dismissed as a "sham affidavit" because it plainly contradicts his own prior testimony.[3] Even if the Court accepts the affidavit, Defendant maintains it does not defeat summary judgment because Plaintiff had five

---

[3] "In considering a motion for summary judgment, a district court must consider all the evidence before it and cannot disregard a party's affidavit because it conflicts to some degree with an earlier deposition." *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 893 (5th Circ. 1980). The "sham affidavit doctrine" is an exception to the general rule by which a party may not "defeat a motion for summary judgment that impeaches, without explanation, sworn testimony." *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996). While this Court acknowledges that the non-moving party may not manufacture a dispute of fact merely to defeat a motion for summary judgment, the Court does not find the sham affidavit doctrine applicable here. Plaintiff in his Declaration clearly explains the basis for his understanding of the events and the lack of training with regard to Defendant's weight and height limits. *See* R. Doc. 135-11. Plaintiff states that he had been unaware of the weight and height limitation set forth by Defendant and that he "was not trained by Marquette to perform this lifting above my shoulders in this awkward position, with such limited space, and under the circumstances I've described." *Id.*, p. 3. Any inconsistencies between his testimony and his declaration appear to be either immaterial or are otherwise explained.

years of experience as a deckhand, he was an "uncovered seaman" at the time of the accident, the vessel was adequately manned, he was instructed to perform deckhand work and agreed, and he admitted moving lock lines was a familiar, routine, and ordinary task. R. Doc. 145. Defendant contends Plaintiff was responsible for determining whether the lifting of this specific lock line required assistance. He was instructed to remove rigging, not this specific line, by the captain, rather than the pilot, Defendant maintains, and Plaintiff, as a trained deckhand, was obligated to exercise reasonable care for his own safety, in accordance with his previous training, experience, and common sense. R. Doc. 145, p. 9.

LAW AND ANALYSIS

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).

Under Federal Rule of Civil Procedure 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 322. When the moving party has met its Rule 56(c) burden, "[t]he non-movant cannot avoid summary judgment...by merely making 'conclusory allegations' or 'unsubstantiated assertions.'" *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir.2002) (quoting

6

*Little*, 37 F.3d at 1075). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

The Jones Act provides a seaman a cause of action for injuries he sustained as a result of his employer's negligence. *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 335 (5th Cir. 1997). To establish causation under the Jones Act, a plaintiff bears a "featherweight" burden of proof. *Gavagan v. United States*, 955 F.2d 1016, 1019 (5th Cir. 1992). Thus, a seaman may recover under the Jones Act if his employer's negligence contributed to his injury, even in the slightest degree. *Gautreaux*, 107 F.3d at 335; *see also In re Cooper/T. Smith*, 929 F.2d 1073, 1076-77 (5th Cir. 1991) (citing *Landry v. Oceanic Contractors, Inc.*, 731 F.2d 299, 302 (5th Cir. 1984) ("Under the Jones Act, a defendant must bear the responsibility for any negligence, however slight, that played a part in producing the plaintiff's injury.")). Although the burden of proving causation is slight, a Jones Act plaintiff must nevertheless offer some evidence of his employer's negligence to prevail at trial. *Henderson v. T&M Boat Rentals*, LLC, 2018 WL 3819930 (E.D. La. August 10, 2018).

In this case, Defendant contends there were no unreasonably unsafe conditions on the vessel and Plaintiff was well-trained as a deckhand with years of experience such that he was obligated to request assistance if he genuinely believed the task assigned him was unsafe to perform alone. However, whether there existed a company-sanctioned 70-pound and 60-inch lifting limit and whether Plaintiff was trained in regard to such a lifting limitation is in doubt.

Defendant does not dispute that the saturated lock line weighed nearly 100 pounds or that it was placed at Plaintiff's shoulder height. Instead, Defendant points to Plaintiff's deposition testimony in which he states that he perceived the task as routine. Yet, Plaintiff explains in his Declaration that he was unaware that Defendant had a height and weight limit for lifting when he was confronted with the task and when he gave his deposition. Furthermore, whether the positioning of the lock line was an unreasonably unsafe condition is in question and not clearly resolved by the record evidence. These are genuine issues of material fact that are best resolved by the jury, which can assess the credibility and weight of the witnesses' testimony, and thus summary judgment is precluded.

To prevail on an unseaworthiness claim, a plaintiff must first show the vessel was unseaworthy. A vessel's unseaworthiness may arise from several circumstances, including defective gear, appurtenances in disrepair, an unfit crew, an improper method of loading cargo, or an insufficient number of workers assigned to a task. *Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 499 (1971). Once the plaintiff demonstrates the vessel's unseaworthiness, he must also show that the "unseaworthy condition played a substantial part in bringing about or actually causing the injury and that the injury was either a direct result of a reasonably probable consequence of the unseaworthiness." *Johnson v. Offshore Express, Inc.*, 845 F.2d 1347, 1354 (5th Cir. 1988).

Defendant again points to Plaintiff's own testimony that he had perceived no issues with the lock line. However, as he explains in his Declaration, he had not been trained in recognizing that attempting to lift and move the lock line as positioned would be contrary to Defendant's lifting weight and height limits. Whether the saturated lock line hung at shoulder height created an unseaworthy condition is in doubt. Plaintiff claims that it was, and Defendant states that, if Plaintiff

thought it was, he should have asked for assistance. Again, the Court finds on the current record there are genuine issues of material fact that preclude summary judgment in Defendant's favor.

Accordingly,

**IT IS ORDERED** that the Motion for Summary Judgment filed by Defendant Marquette Transportation Company Gulf-Inland, LLC (R. Doc. 131) is DENIED.

New Orleans, Louisiana, this 29th day of March 2024.

_____
GREG GERARD GUIDRY
UNITED STATES DISTRICT JUDGE