UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| WILLIAM TISDALE | CIVIL ACTION |
| VERSUS | NO: 22-00237 |
| MARQUETTE TRANSPORTATION COMPANY, LLC, et al. | SECTION: T (5) |

**ORDER and REASONS**

Before the Court are three motions to exclude expert evidence. Defendant Marquette Transportation Company ("Marquette') has filed a Motion in Limine to Exclude Expert Testimony of Susan M. Bowley. R. Doc. 205. Marquette has also filed a Motion in Limine to Exclude Expert Testimony of Capt. Larry Strouse. R. Doc. 249. Plaintiff William Tisdale has filed a Motion in Limine to Exclude or Alternatively Limit Expert Testimony of Capt. Ronald L. Campana. R. Doc. 252. The Court will take up each of these motions in turn.

BACKGROUND

Plaintiff is a resident of Mississippi who was employed by Defendant, which is incorporated in Delaware, on March 13, 2019. On that date, Plaintiff was assigned to the M/V ST JOHN, owned by Defendant, working as an uncovered steersman in waters near the Houston Ship Channel. He was instructed by the captain of the M/V ST JOHN, Captain Freddie Greenhouse, to perform certain deckhand work as the vessel conducted barge fleeting work. Plaintiff was injured when he picked up a lock line on the starboard side of a barge in the ST JOHN's tow, the MTC-1363, and felt a pop in his lower back/hip on his right side. Plaintiff reported the accident immediately after it occurred, and a "Personal Injury/Illness Report" was completed. Plaintiff

received an ice pack and over-the-counter medication to help with his back pain after the accident. He did not perform any work on the vessel after the accident. Plaintiff underwent further treatment as set forth in the Court's Findings of Fact & Conclusions of Law (R. Doc. 129).

Plaintiff filed suit against Defendant in February of 2022 under the Jones Act and general maritime law, alleging his injury and damages were due to the negligence of the defendant and the unseaworthiness of its vessel. He asserted (1) the vessel was short-handed because it was one deckhand short of a full crew; (2) the captain ordered him to perform the duties of the absent deckhand and to work outside his job classification; and (3) he was not fit for that type of work because he had become "deconditioned" after many months of not performing such type of work. R. Doc. 1, p. 3. He also claimed (1) that he had been working in a narrow passageway on the side of the barge, MTC-1363; (2) that the lock line he was ordered to move was coiled and hanging at shoulder height from the cover top barge; (3) that the lock line weighed over 100 pounds and was saturated from the rain; and (4) that, when he lifted and carried the lock line, he felt a pop in his lower back, which then gave out with excruciating pain. R. Doc. 1, p. 4.

Plaintiff asserted various bases for negligence, including (1) negligence in ordering Plaintiff to perform work outside of his job classification; (2) negligence in failing to provide a seaworthy vessel and adequate crew; (3) failure to provide proper safety equipment and appurtenances; (4) exposing Plaintiff to unreasonable risk of injury and harm while serving aboard the vessel; (5) not providing Plaintiff with enough equipment, assistance, and manpower to do the tasks assigned; (6) failure to warn Plaintiff of dangers and needlessly exposing Plaintiff to nonapparent dangers; and (7) negligence implied in these allegations and those that may be shown at trial on the merits. R. Doc. 1, p. 5. He asserted similar bases for unseaworthiness, including: (1)

defective machinery equipment and appurtenances; (2) furnishing an undermanned vessel, failing to man and crew the vessel properly; (3) vessel not properly equipped; (4) inadequate equipment and safety devices, (5) unsafe conditions aboard the vessel; (6) inadequate or non-existent communication devices to warn Plaintiff of dangers; and (7) unseaworthiness implicit in these factual allegations and those to be shown at trial on the merits. R. Doc. 1, p. 6.

APPLICABLE LAW

Federal Rule of Evidence 702 governs the admissibility of expert opinion testimony. *See Roman v. W. Mfg., Inc.*, 691 F.3d 686, 692 (5th Cir. 2012); *Daubert v. Merrell Dow. Pharms., Inc.*, 509 U.S. 579 (1993). Rule 702 is intended "to protect juries from unreliable and irrelevant expert testimony." *In re: Taxotere (Docetaxel) Prod. Liab. Litig.*, 26 F.4th 256, 268 (5th Cir. 2022). Rule 702 provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if" (1) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;" (2) "the testimony is based on sufficient facts or data;" (3) "the testimony is the product of reliable principles and methods; and" (4) "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

In *Daubert*, the Supreme Court established a two-part test designed to determine the admissibility of expert testimony. 509 U.S. at 588; *United States v. Hitt*, 473 F.3d 146, 148 (5th Cir. 2006). First, the court must determine the quality of the expert's testimony by examining whether the testimony reflects scientific knowledge, is derived by the scientific method, and is supported by appropriate validation. *Daubert*, 509 U.S. at 590. "Testimony that is not scientific in nature is better judged by examining whether the expert has sufficient personal knowledge, work

experience, or training to support the opinions offered." *Redding Linden Burr, Inc. v. King*, 2009 WL 277531, at *2 (S.D. Tex. Feb. 4, 2009) (citing Fed. R. Evid 702 and *Kumho Tire. Co. v. Carmichael*, 526 U.S. 137, 150-51 (1999)).

Second, the court must determine whether the testimony will assist or help the trier of fact to understand the evidence. *Id.* at 591. The Fifth Circuit has repeatedly observed: "Assisting the trier of fact means 'the trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument.'" *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 293–94 (5th Cir. 2019) (quoting *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992)).

> There is no more certain test for determining when experts may be used than the commonsense inquiry [of] whether the untrained layman would be qualified to determine intelligently and to the best degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute.

*Vogler v. Blackmore*, 352 F.3d 150, 155 n.5 (5th Cir. 2003) (quoting Fed. R. Evid. 702 advisory committee's note to 1972 proposed rules). "In other words, expert testimony is unnecessary where a jury can 'adeptly assess [the] situation using only their common experience and knowledge.'" *Beech v. Adriatic Marine, L.L.C.*, 2021 WL 629665, at *5 (E.D. La. Jan. 12, 2021) (quoting *Peters v. Five Star Marine Serv.*, 898 F.2d 448, 450 (5th Cir. 1990). While Rule 702 does not require that an expert be "highly qualified" in order to testify about a given issue, "[a] district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009);

When expert testimony is challenged under Rule 702, the burden of proof as to the expert's qualifications and the testimony's admissibility rests with the party seeking to present the testimony. *See Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

**Marquette's Motion in Limine to Exclude the Expert Testimony of Dr. Susan M. Bowley**

Ms. Bowley is a biomechanical engineer who is prepared to offer "opinions to address issues for this case related to injury causation biomechanics." Specifically, Ms. Bowley intends to opine:

**Opinions 1-3**: That the wet rope bundle weighed ninety-eight pounds, was eighty inches above deck, and, therefore, exceeded the supposed lifting limits contained in Marquette's Deckhand Job Description;

**Opinion 4**: The rope bundle's center of gravity was 11 inches in front of Tisdale's body and 48 inches above the barge deck;

**Opinion 5**: That the (a) wet rope bundle, (b) amount of space Tisdale was working in, (c) clamp on which the wet rope bundle hung, and (d) wet deck surface, were all unsafe conditions; and

**Opinion 6**: That Tisdale's axial rotation while lifting the wet rope bundle could cause soft tissue damage to the lumbar spine.

Marquette asserts her testimony should not be allowed because she intends to offer opinions that (1) are unhelpful to the jury; (2) are beyond her expertise; (3) are unreliable; and (4) are unfairly prejudicial, will confuse the issues, will mislead to the jury, and will waste time. As the party offering Ms. Bowley's testimony, Tisdale must prove by a preponderance of the evidence that Ms. Bowley is both qualified to be considered an expert and that her testimony will assist the trier of fact to understand the evidence in this case. Marquette asserts he cannot meet this burden. Marquette argues that Bowley's opinions will not help the jury to determine a fact issue. Her opinion as to the weight of the lock line, for example, is based on cherry-picked deposition

testimony and a rope specification sheet she found on the internet. Bowley has ignored the testimony of other witnesses, including Tisdale himself, Marquette asserts. Marquette argues that no part of her opinions is beyond the understanding of a jury of ordinary laypersons. No expertise is required to read and interpret a deposition transcript, a rope specification sheet from the internet, photographs/measurements taken during an inspection, or a job description written in plain English.

Marquette points to *Robroy Indus.-Texas, LLC v. Thomas & Betts Corp.*, in which the Court recognized that an expert witness who merely reviews exhibits and depositions and then attempts to tell the jury what it all means, is not offering expert testimony at all, but is instead merely giving the jury his or her spin on the evidence.

Marquette also argues that Bowley's testimony regarding unsafe conditions is beyond her expertise and unreliable. She intends to testify that there were multiple unsafe lifting conditions, including [1] the very heavy and unwieldy rope bundle (~98 pounds), [2] the height of the rope bundle above deck (6-ft 8-inches, or 80 inches), [3] the very limited space available to position his body and maneuver the very heavy rope bundle in a safe manner, [4] the rope bundle secured over the top of the cover clamp hook, and [5] the wet deck surfaces." Marquette asserts that her testimony is unnecessary because the photos and measurements taken during the inspection speak for themselves, and that every barge in the world would be unsafe in her view. Marquette argues such testimony is outside her expertise as a biomedical engineer. She is not a marine safety expert. Her opinions are unreliable, Marquette argues, because they rely on the Deckhand Job Description and the manual lifting metric in the National Institute for Occupational Safety and Health (NIOSH) guidelines.

Both Marquette and Tisdale refer to two recent decisions from this Court—both Jones Act cases involving the same expert and near-identical expert reports—but reaching opposite results on the issue. In *Thibodeaux v. Gulf Coast Tugs, Inc.*, the Court excluded the expert's testimony that was based on NIOSH, and explained "neither the NIOSH standards, nor the American Bureau of Shipping guidelines on lifting, have been adopted as the applicable standard of care in the maritime industry for lifting objects. Thus, allowing expert testimony on these bases would confuse the jury by introducing standards as to which compliance is not required." 2023 WL 2810691, at *3 (E.D. La. Apr. 6, 2023). But in *Pape v. Associated Terminals, LLC*, the Court allowed the expert's testimony, and explained that "opinions incorporating the NIOSH and ABS standards are admissible because [the expert] is qualified to testify as to such matters, the opinions are based on sound methodology, and will aid the jury." 2023 WL 6626146, at *8 (E.D. La. June 9, 2023).

Tisdale responds that Dr. Bowley's opinions relate to unsafe lifting conditions and are not directed to (nor do they mention) issues of negligence, legal causation, vessel seaworthiness, or the medical causation of his specific injury. He points to Bowley's report, which details the calculations she performed to determine that he experienced a vertical spinal compression of 1,078 pounds, far mor compression than if he had lifted only 70 pounds as indicated in the Deckhand job description. She will explain that, while disc failure occurs at about 3,371 pounds of vertical compression, Tisdale's injury was instead rotational in origin, and he experienced lumbar disc torque rather than compression. Dr. Bowley will testify that the degree of rotation experienced, coupled with an off-center 98-pound load, can easily cause soft tissue damage (discs) to the lumbar spine. Tisdale asserts that lifting opinions are entirely within her area of expertise. She is not

offering opinion on medical causation, nor on maritime operational safety conditions. Finally, Tisdale argues that his expert does not rely on NIOSH standards, nor does she opine that the injury was caused by a NIOSH violation. Tisdale asserts that his expert's testimony will assist the trier of fact and is relevant and probative to the issues to be decided by the jury.

After reviewing the applicable law, the expert's report and testimony, and the argument of the parties, the Court will DENY Marquette's Motion in Limine to Exclude the Testimony of Susan Bowley. Most of Marquette's arguments go to the weight to attribute to this expert's testimony, not to its reliability or relevance. Any objections to specific opinion testimony are referred to trial.

**Marquette's Motion in Limine to Exclude Expert Testimony of Capt. Larry Strause**

Marquette seeks to exclude Capt. Strouse's opinions asserting they are not helpful to the trier of fact; they conflict with the eyewitness testimony; they invade the province of the trier of fact; they do not require specialized knowledge; and they will serve only to mislead and confuse the jury. Marquette addresses certain of Capt. Strouse's opinions.

First, although Capt. Strouse opines that the walk area alongside the Barge MTC-1363's starboard side was "very narrow" and contained "possible tripping hazards," in his report, Capt. Strouse acknowledged the Barge MTC-1363's measurements are "standard" to "most hopper barges." Thus, by his own admission there is nothing unusual about the Barge MTC-1363, though he portrays the MTC-1363 (and thousands of barges like it) as unsafe. Marquette argues that the purported tripping hazards on the perimeter of MTC-1363 are irrelevant and misleading because such tripping hazards are normal and expected and deckhands are trained to avoid them. Here, Mr. Tisdale does not contend he slipped, tripped, or fell. Given that Capt. Strouse concedes the

dimensions of the MTC-1373 are no different than any other barge in use in America, he should not be permitted to mislead or confuse the jury by suggesting that this particular barge was "very narrow" or that it created an unsafe workspace.

Second, Marquette asserts Capt. Strouse's testimony is contrary to that of Tisdale's on the underlying facts of the case. Tisdale testified he felt a "pop" when he lifted the lock-line as he shifted it from one shoulder to the other. But during his deposition, Capt. Strouse testified that in interviewing Tisdale, he asked him if his injury happened when he was moving the line from his left shoulder to his right, and Tisdale said no, he was bear-hugging it, and that's when he twisted his back. This contradiction should preclude Capt. Strouse from offering an opinion, and thereby allow the plaintiff to use an expert to offer indirectly what he cannot offer directly. *See, e.g., Chan v. Coggins*, 294 F. App'x 934, 939 (5th Cir. Oct. 2, 2008) (The Fifth Circuit upheld the district court's decision to exclude an expert report that "conflict[ed] with [Plaintiff]'s testimony of his position at the time of the accident."); *see also Moore v. Int'l Paint, L.L.C.*, 547 F. App'x 513, 515 (5th Cir. 2013) (citing Guillory, 95 F.3d at 1331) ("When an expert's testimony is not based upon the facts in the record but on altered facts and speculation designed to bolster a party's position, the trial court should exclude it."); *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007) (For expert testimony to be admissible, "the existence of sufficient facts and a reliable methodology is in all instances mandatory.").

Third, Marquette asserts Capt. Strouse's testimony regarding Marquette's Deckhand Job Description is not "scientific knowledge" that would help the jury. See FED. R. EVID. 702. Capt. Strouse does not attempt to opine on the general duties of a deckhand based upon his experience; he is offering the jury his interpretation of a document—Marquette's Deckhand Job Description—

which is written in plain English. Any lay person or jury can read and interpret the job description without expert assistance. Therefore, Capt. Strouse's interpretation of the Marquette Job Description for deckhands should be excluded because it does not satisfy the threshold inquiry required of Fed. R. Evid. 702. It is not helpful to the trier of fact. Marquette insists that allowing Capt. Strouse to testify that the Deckhand Job Description contained limitations would mislead the jury and confuse the issues, because it is clear in the job description that these were minimums, not maximums.

Fourth, Marquette argues Capt. Strouse cannot simply opine the task Tisdale was asked to perform was unusual, out of the ordinary or dangerous in any fashion and he cannot simply offer *ipse dixit* that which is not supported by any reliable methodology whatsoever. Marquette contends an employer cannot be negligent simply for asking an employee to do the job he was hired to do. Marquette points out that Capt. Strouse agrees that a deckhand's job is to move rigging, including dock lines and safety lines, that moving a lock-line is a one-main task, that if a deckhand is concerned about his ability to lift a lock line safely without injuring himself, he should ask for assistance, and that generally lines and rigging can be removed in a safe and efficient manner.

Fifth, Marquette asserts Capt. Strouse will offer factual testimony without firsthand knowledge, nor can he comment on the credibility of witnesses or the weight to be afforded documents. Marquette bases this argument on Capt. Strouse's reliance on the ST JOHN's boat logs, which indicated the tow and barge configuration was not how the witnesses said they were. Marquette argues that by relying on the boat logs, Capt. Strouse is vouching for the reliability of those logs over the testimony of fact witnesses. This is true, Marquette argues, even though Capt. Strouse admits the boat logs were not accurate as to when Tisdale was working.

Sixth, Marquette questions Capt. Strouse's opinion that hanging rigging on a cover clamp, as was allegedly done in this case, is negligent and unsafe and that such rigging should instead be coiled on the deck. Although he admits he has seen lines hung over clamps during his time as a marine surveyor out on various tows, he offers no explanation of why lifting a rope all the way from the deck to one's shoulder is preferable to placing a rope that is already at shoulder height onto one's shoulder. Marquette asserts he lacks the expertise to offer such testimony anyway because he is not an ergonomics expert.

Seventh, Marquette contends Capt. Strouse has no expert basis to opine that the pilot of the vessel was negligent because he did not require the other deckhand, Jarvis Driver, to carry all the rigging all the way back to the tug boat. Similarly, Marquette argues that Capt. Strouse cannot say that the pilot should have repositioned the ST. JOHN to facilitate the movement of lines. Marquette points out that Capt, Strouse has conceded that these activities are routine, normal practices. Capt. Strouse, Marquette contends, should not be allowed to suggest that Marquette was negligent merely because he can envision an alternative method of performing routine work that he considers safer. A seaman who merely points to what he (or his expert) deems a safer method does not demonstrate that the employer failed to use reasonable care or that its ship was unseaworthy. *See, e.g., Harrison v. Seariver Mar., Inc.*, 2003 WL 342266, at *5 (5th Cir. Jan. 28, 2003) ("Ordinary prudence is exercised when a safe procedure is used for a routine task, even when a safer procedure might exist."). Finally, Marquette maintains Capt. Strouse does not identify any discernable methodology that he used to opine on safe alternatives.

Tisdale responds that Marquette does not dispute Capt. Strouse's qualifications, having been certified as a maritime expert in various state and federal courts, including the Eastern District

of Louisiana. Before he served as a tow boat captain or pilot, he served as a mate and as a deckhand and became experienced in the making and breaking of tow flotillas. He has a U.S. Coast Guard License, Master, upon inland steam or motor vessel of any gross tonnage. Captain Strouse has recently served as a Captain aboard a tow boat conducting river trials and pushing a 16-barge flotilla from Greenville, Mississippi to Myrtle Grove, Louisiana. Last year, he served as Captain of a 12,000-horsepower tow boat.

First, Tisdale points out that it is reasonable for Capt. Strouse to rely on the vessel's logs because they give a specific timeline of when and where each barge was dropped off, and they are the best evidence of this "where and when" then the memories of the pilot, who testified three years after the accident. Second, as to the characteristics of the barge, Capt. Strouse was very careful and precise in his inspection and measurements of the starboard deck of the barge where the accident occurred. Tisdale maintains that Capt. Strouse thoroughly explained the basis for his determination that the space where Tisdale had been standing was narrow, that there were various tripping hazards, and that the walking space was restricted. Third, as to the characteristics of the lock line, Tisdale points out that Capt. Strouse based his calculation on Pilot Williams's testimony and the fact that there was a 3-inch line on the deck at the barge inspection. Fourth, as to the improper location of the lock line, Capt. Strouse testified that he would not have allowed the deckhand under his control to leave it there. He testified that the location of the accident was a restrictive space, that the hanging of lines is not an intended use of a cover clamp, and that the purpose is to assist in the removal of the barge's cargo covers. Capt. Strouse testified lock lines are to be coiled on the deck and remain on deck, and that it was not customary in the maritime industry to hang lock lines on the cover clamps. According to Capt. Strouse, Pilot Williams should

have immediately recognized that the hanging of the dock line on the cover clamp was improper. As to the Marquette's Deckhand Duties and Job Description, Tisdale asserts Capt. Strouse's testimony is based on the fact that he is a maritime expert knowledgeable about deckhand duties and lifting lines of different weights to different heights. Capt. Strouse has been a captain for 55 years, Tisdale points out, and was once a deckhand himself. Fifth, as to the job description, Capt. Strouse testified that the deck hand manual says "lifting up to 70 lbs" and that such requirements are standard in the industry. Tisdale argues that Capt. Strouse, based on his experience, is knowledgeable about the duties and work requirements of a deckhand. Sixth, as to the method Tisdale used to lift the line, Tisdale asserts Capt. Strouse can testify that Tisdale "bear hugged" the line based on Tisdale's statements to him. Tisdale asserts this is consistent with his own deposition testimony and his testimony at the cure trial. Seventh, as to negligence and safer alternatives, Tisdale argues that Capt. Strouse's testimony is both common sense and industry standard when someone is moving a line. Capt. Strouse, Tisdale asserts, clearly explained the basis for why the movement of the lock line was preferable with the barges breasted together or if the boat had come along the starboard side.

In sum, Tisdale argues that Capt. Strouse's knowledge and experience working as a captain and deckhand in brown water on tow boats and barges allows him to illuminate aspects of the case that are central to a lay person's understanding of why Marquette did not use reasonable care and how that failure caused Tisdale's injury. Tisdale points out that an average juror is not familiar with the duties of a deckhand or whether safer alternatives are available. Capt. Strouse, Tisdale maintains, has the experience to read and interpret boat logs and is familiar with barge fleeting operations.

The Court will DENY Marquette's Motion in Limine to Exclude the Expert Testimony of Capt. Larry Strouse. Plaintiff Tisdale has sufficiently established that Capt. Strouse's opinion testimony is based on his expertise and experience as a boat captain and that his testimony will be helpful to the jury in determining the issues at trial. Fed. R. Evid. 702. Any objections as to specific opinions may be raised at trial.

**Tisdale's Motion in Limine to Exclude or Alternatively Limit the Report and Opinions of Capt. Ronald L. Campana**

Plaintiff Tisdale in turn seeks to exclude or limit the expert testimony of Defendant's expert, Capt. Ronald Campana. He argues that the probative value of Capt. Campana's opinions is substantially outweighed by a danger of unfair prejudice, confusion of the issues, and misleading the jury. He contends the witness's opinions are either unreliable or are within the ordinary knowledge and experience of the prospective jurors. He also argues that many of Capt. Campana's opinions are mere restatements or summaries of acts in the record, coupled with an assertion that Tisdale's actions were "not proper," or that Tisdale "failed to act pursuant to his training," or "showed poor judgment." Tisdale asserts the Court should exclude these "opinions" because they will not help the jury understand the evidence or determine facts in issue.

Tisdale points to Capt. Campana's December 9, 2022 Expert Report as containing misunderstandings of the actual facts, evidencing haphazard "methodology," and presents opinions which are not only unreliable but also are completely wrong and misleading. *See* R. Doc. 252-1, pp. 7-12. Much of Tisdale's argument is based on the configuration of the barges at the time of the accident. Tisdale relies on the vessel logs, while Capt. Campana apparently relied on deposition testimony to form his opinions. Accordingly, there is a dispute as to the configuration

of the barges at the time of the accident. This is a factual question for the jury.

Tisdale also points to Capt. Campana's November 30, 2023 Supplemental Report as containing a collection of general statements rather than opinions citing reliable factual sources and based upon proper methodology. R. Doc. 252-1, pp. 12-15. Tisdale notes, for example, that many of Capt. Campana's opinions, that Tisdale failed to comply with MTC's safety guidelines and that he failed to follow his training and experience, are simply vague statements because Capt. Campana fails to identify what safety guidelines and what training and experience Tisdale failed to follow.

Tisdale contends that Capt. Campana's reports and anticipated expert testimony should not be admissible because all three components of Fed. R. Evid. 702's reliability analysis have not been met. R. Doc. 252-1, p. 18 (citing *Amorgianos v. National R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir.2002) ("The reliability analysis applies to all aspects of the expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion.") (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir.1994)). He points out that an expert's testimony must be held inadmissible if "there is simply too great an analytical gap between the data and the opinion proffered," such that the opinion is "connected to the existing data only by the ipse dixit of the expert." *Id.* (citing *Amorgianos*, 303 F.3d at 266 (quoting *General Electric Co. v. Joiner*, 522 U.S. 136 (1997)). He argues there is an "analytical gap" between the chronology presented in contemporaneous Marquette Daily Boat Logs and Capt. Campana's unsupported opinion that when Tisdale's accident occurred at 4:45 pm the MTC-1363 and the CH-0133 were still breasted together.

Marquette responds that Capt. Campana's first report was produced in response to

Tisdale's original theory of the case, and that his supplemental report was produced in response to Tisdale's current theory of the case. Marquette acknowledges there are disputed facts, but it argues that "[an expert]'s reliance on one version of a disputed fact does not render his testimony inadmissible." R. Doc. 258, p. 20 (quoting *Nagle v. Gusman*, 2016 WL 9411377, at *10 (E.D. La. Feb. 25, 2016); and citing Fed. R. Evid. 702, Advisory Committee Note ("When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts."); *Arnold v. Canal Barge Co., Inc.*, 2014 WL 2465313, at *2 (E.D. La. 2014) ("experts may rely on one version of a disputed fact"). Marquette asserts that "Questions related to the bases and sources of an expert's opinion generally affect the weight accorded to that opinion, rather than its admissibility." *Id.* (citing *Nagle*, 2016 WL 9411377, at *10).

Marquette states that Capt. Campana's opinions can be summarized as follows: deckhands routinely move lock lines by hand; this is a job that is normally completed by one man; the MTC-1363 is a standard hopper barge, and its dimensions are standard in the industry; Tisdale was an experienced hand who knew how to perform this task, and even he did not believe it was dangerous; any member of the crew, including "covered steersmen," can be called to work the deck if needed; this is a normal, routine task performed by deckhands up and down the Mississippi River every day; it is not dangerous or unsafe. R. Doc. 258, pp. 20-21. In short, Capt. Campana will testify that the accident occurred solely because Tisdale utilized an unsafe method of work, as opposed to someone else's actions or inaction, a condition of the St. John, or a condition of the MTC-1363. *Id.* at 21. Marquette asserts that Capt. Campana's testimony will be helpful to the trier of fact because the issues before the jury involve maritime matters the typical layperson does not know about.

The Court has reviewed the reports and deposition testimony of Capt. Campana, and with the caveat that the witness refrain from commenting on the credibility of witnesses or the weight to be attributed to the evidence, the Court finds Defendant has satisfied its burden of establishing that Capt. Campana's testimony is based on his experience, is reliable, and will be useful to the jury to resolve the issues in dispute. The Court will deny Tisdale's Motion in Limine to Exclude or Alternatively Limit the Expert Testimony of Capt. Campana.

Accordingly,

**IT IS ORDERED** that Defendant Marquette Transportation Company's Motion in Limine to Exclude Expert Testimony of Susan M. Bowley (R. Doc. 205), Marquette's Motion in Limine to Exclude Expert Testimony of Capt. Larry Strouse (R. Doc. 249), and Plaintiff William Tisdale's Motion in Limine to Exclude or Alternatively Limit Expert Testimony of Capt. Ronald L. Campana (R. Doc. 252) are hereby DENIED.

New Orleans, Louisiana, this 7th day of May 2024.

GREG GERARD GUIDRY
UNITED STATES DISTRICT JUDGE