**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **WILLIAM TISDALE** | **CIVIL ACTION** |
| **v.** | **NO: 22-237** |
| **MARQUETTE TRANSPORTATION COMPANY, LLC ET AL.** | **SECTION:  T (5)** |

## ORDER and REASONS

Before the Court is a Motion for Summary Judgment on Medical Causation filed by Defendant Marquette Transportation Company Gulf-Inland, LLC (R. Doc. 202) seeking summary judgment in its favor as to Plaintiff William Tisdale's medical causation claims with respect to the L4-L5 and L5-S1 levels. Plaintiff has filed a response in opposition (R. Doc. 210), to which Defendant has filed a reply (R. Doc. 224). For the reasons set forth below, the Court will grant in part and deny in part the Motion for Summary Judgment.

**BACKGROUND**[1]

William Tisdale sustained an L3-L4 disk herniation on March 13, 2019, "when he picked up a lock line on starboard side of a barge in the St. John's tow, the MTC-1363, and felt a pop in his lower back/hip on his right side." On February 2, 2022, Tisdale sued Marquette for Jones Act negligence and unseaworthiness. This Court held a bench trial on February 27, 2023, to entertain Tisdale's disputed claims for cure, the "cure trial." Tisdale maintained that his expert, Dr. Donald Dietz, concluded the accident had caused damage not only at the L3-L4 level, requiring surgery, but also at the L4-L5 and L5-S1 levels, requiring a three-level fusion. Marquette disputed the claim

---

[1] This information is taken largely from the Complaint (R. Doc. 1) and the Court's Findings of Fact & Conclusions of Law (R. Doc. 129), following the trial on the severed issues of maintenance and cure held on February 27, 2023.

based on its expert, Dr. John Davis, who found that only the damaged condition of the L3-L4 level was related to the accident. The Court issued its Findings of Fact and Conclusions of Law (Rec. Doc. 129) on July 11, 2023, finding that Marquette's maintenance and cure obligations were limited to the L3-L4 minimally invasive TLIF operation recommended by Marquette's expert, Dr. Davis.

In its motion for summary judgment, Marquette now relies on the Court's findings in the cure trial that Marquette's maintenance and cure obligation did not encompass anything beyond the L3-L4 minimally invasive TLIF operation recommended by Dr. Davis. Marquette asserts that Tisdale should be collaterally estopped from relitigating medical causation of his claims as they relate to the condition of his L4-L5 and L5-S1 levels and the three-level fusion surgery recommended by Dr. Dietz. Tisdale agrees that he cannot relitigate the cause of the condition at the L4-L5 and L5-S1 levels, but he maintains he should be able to produce evidence as to whether the surgery at the L3-L4 level could subsequently and negatively impact levels L4-L5 and L5-S1 and to what extent. Tisdale argues he should not be collaterally estopped from eliciting this relevant evidence or any other relevant evidence of future medical treatment or future pain, post-surgically, which were not the subject of the cure trial.

### LAW AND ANALYSIS

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the

evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).

Under Federal Rule of Civil Procedure 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 322. When the moving party has met its Rule 56(c) burden, "[t]he non-movant cannot avoid summary judgment...by merely making 'conclusory allegations' or 'unsubstantiated assertions.'" *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir.2002) (quoting *Little*, 37 F.3d at 1075). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

The Jones Act provides a seaman a cause of action for injuries he sustained as a result of his employer's negligence. *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 335 (5th Cir. 1997). To establish causation under the Jones Act, a plaintiff bears a "featherweight" burden of proof. *Gavagan v. United States*, 955 F.2d 1016, 1019 (5th Cir. 1992). Thus, a seaman may recover under the Jones Act if his employer's negligence contributed to his injury, even in the slightest degree. *Gautreaux*, 107 F.3d at 335; *see also In re Cooper/T. Smith*, 929 F.2d 1073, 1076-77 (5th Cir. 1991) (citing *Landry v. Oceanic Contractors, Inc.*, 731 F.2d 299, 302 (5th Cir. 1984) ("Under the Jones Act, a defendant must bear the responsibility for any negligence, however slight, that played

a part in producing the plaintiff's injury.")). Although the burden of proving causation is slight, a Jones Act plaintiff must nevertheless offer some evidence of his employer's negligence to prevail at trial. *Henderson v. T&M Boat Rentals*, LLC, 2018 WL 3819930 (E.D. La. August 10, 2018).

"Federal common law permits the use of collateral estoppel upon the showing of three necessary criteria[.]" *Hicks v. Quaker Oats Company*, 662 F.2d 1158, 1166 (5th Cir.1981); *see also Holmes v. Jones*, 738 F.2d 711, 713 (5th Cir.1984). The three criteria are:

(1) that the issue at stake be identical to the one involved in prior litigation;

(2) that the issue has been actually litigated in the prior litigation; and

(3) that the determination of the issue in the prior litigation has been a critical and necessary part of the judgment in that earlier action. Hicks, 662 F.2d at 1166; Holmes, 738 F.2d at 713.

The issue before the Court at the cure trial was whether the accident caused the injury to not only L3-L4 level, but also whether it caused the injury resulting in the condition of the L4-L5 and L5-S1 levels. There was testimony that the injury to L3-L4 could eventually impact or aggravate the higher levels and the doctors opined on whether the condition of the L4-L5 and L5-S1 levels was related to the injury at the L3-L4 level that Dietz and Davis both said required surgery. The Court rejected the testimony from Dr. Dietz that the original accident and injury to the L3-L4 level was the cause of the condition later observed at the L4-L5 and L5-S1 levels. The Court was not asked to determine whether the proposed surgery at L3-L4 could later impact the levels at L4-L5 and L5-S1 and what those impacts could be. Marquette responds that, to determine whether its cure obligation encompassed a three-level fusion, the Court necessarily had to determine if Tisdale's alleged L4-L5 and L5-S1 level injuries were related to or caused by the subject accident. Therefore, according to Marquette, the scope of the limited cure trial included both of these issues, i.e., whether Marquette's cure obligation encompassed a three-level fusion

versus a one-level fusion and whether Tisdale's L4-L5 and L5-S1 level injuries were related to the accident. Marquette contends that the Court's determination of medical causation was an integral part of its final decision regarding Marquette's cure obligations, and the two cannot be logically separated. Ultimately, Marquette concedes that, post-surgery, Tisdale, who has, as far as this Court knows, since had his preferred surgery, including the L4-L5 and L5-S1 levels, "would be free to make new arguments or present new evidence and facts that were not presented to the Court during the cure trial."[2]

The Court will grant the motion in part and deny it in part, limiting evidence regarding the L4-L5 and L5-S1 levels to what future damage might be related to the approved fusion surgery at the L3-L4 level. Tisdale is collaterally estopped from attempting to establish that the injuries to his L4-L5 and L5-S1 levels were directly caused or aggravated by the March 13, 2019 incident, as this issue would be identical to the issue already litigated during the cure trial and ruled upon by the Court.

Accordingly,

**IT IS ORDERED** that the Motion for Summary Judgment filed by Defendant Marquette Transportation Company Gulf-Inland, LLC (R. Doc. 202) is GRANTED IN PART AND DENIED IN PART.

New Orleans, Louisiana, this 7th day of May 2024.

_____
GREG GERARD GUIDRY
UNITED STATES DISTRICT JUDGE

---

[2] Marquette also argues that "the fact that Tisdale has independently disabling conditions at L4-5 and L5-S1, which are not directly related to the subject accident, can serve as a basis for Marquette to argue that Tisdale was, is and will be independently disabled from working aboard a vessel, irrespective of his arguments about aggravations or additional injuries to those levels."